1

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                      FOR THE EASTERN DISTRICT OF CALIFORNIA

8    SHEPARD JOHNSON,

9               Plaintiff,                    No. CIV S-10-1968 GEB GGH PS

10          vs.

11   CHESTER MITCHELL, et al.,
                                              FINDINGS AND
12                                            RECOMMENDATIONS

13              Defendants.

14   _____/

15          Previously pending on this court's law and motion calendar for February 3, 2011,

16   were bankruptcy trustee J. Michael Hopper's motions to intervene and to dismiss, filed January

17   4, 2011.  J. Michael Hopper appeared and was represented by J. Russell Cunningham and J. Luke

18   Hendrix.  Plaintiff appeared in pro se.  After hearing oral argument, reviewing the papers, and

19   receiving supplemental briefing, the court now issues the following findings and

20   recommendations.

21   BACKGROUND

22          Plaintiff initiated this action for malicious prosecution on July 23, 2010, and is

23   proceeding with the first amended complaint, filed October 28, 2010.  Plaintiff is a real estate

24   developer who claims that defendants purchased lots for a planned unit development on an island

25   in Panama.  Plaintiff alleges that defendants did not want to be subject to CC&Rs for the

26   development and so rather than settling the matter by way of a contract dispute, plaintiff claims

                                                   1

that defendants interfered with the development and plaintiff's livelihood by spreading deliberate falsehoods, engaging in "wrongful conduct" to intimidate him, destroying his reputation and business, disrupting relations with other lot owners, and discouraging prospective purchasers. They also initiated criminal proceedings against him in the Panama courts which were later dismissed, and which are the subject of plaintiff's malicious prosecution and conspiracy claims. The complaint is based on diversity.

Trustee J. Michael Hopper seeks to intervene, claiming that this action is property of plaintiff's bankruptcy estate because it is sufficiently rooted in the pre-bankruptcy past. According to the Trustee, most of the acts by the lot owners, which are the subject of the malicious prosecution claims, took place beginning in 2004.  The alleged defamatory remarks began in 2004; the criminal investigations were initiated in 2005; plaintiff filed bankruptcy on July 3, 2007, purportedly as a result of all these other actions; and plaintiff claims the criminal charges in Panama were dismissed in 2008.  Plaintiff's contention is that he had no cause of action for malicious prosecution until the Panamanian criminal cases were terminated in his favor, in 2009 and 2010, after his case was converted from a Chapter 11 to a Chapter 7 case on November 4, 2008.

The underlying dispute, according to the Trustee, is that certain lot owners, including defendants Miner and Hermansen ("claimants"), claim that they purchased lots on Isla Solarte, Panama, in the mid-1990s with the belief that plaintiff would provide the promised infrastructure for developing a first class tropical resort on the land, but there had been no progress on the infrastructure.  They claim they were not subject to CC&Rs because they purchased their lots prior to the promulgation of any such CC&Rs.  Plaintiff instead demanded that they sign a new purchase agreement and accept CC&Rs chosen by him at the time he was preparing to transfer title to claimants' lots.  Trustee states that he has reached an agreement with lot owners who would bear the financial burden of completing development of the infrastructure in return for a fixed return.  The Bankruptcy Court has approved that agreement.

1    There is a long procedural history to the bankruptcy case, but it is significant that
2  the Bankruptcy Court on April 24, 2009, granted the estate's motion to dismiss Adversary
3  Proceeding #09-02149 on the ground that plaintiff's claims against Cayo del Sol ("CDS") are
4  property of the estate.  After no appeal was taken, the dismissal order became final.  The
5  adversary proceeding had been intended to thwart a pending compromise between the bankruptcy
6  estate, CDS and certain pre-petition purchasers of portions of the Panama property, including
7  some of the defendants.  On June 5, 2009, the Bankruptcy Court granted a motion to approve a
8  compromise with CDS.  The BAP denied plaintiff's appeal.  The Trustee admits that it released
9  all claims against defendants Miner and Hermansen in this action by this compromise.  The
10  Trustee claims, however, that he did not release any claims against the remaining defendants in
11  this action: Chester and Catherine Mitchell, Kahler, Thomas, Lynch, and Tornga.  The Trustee is
12  attempting to intervene apparently to assist in resolving underlying disputes with the remaining
13  defendants, i.e., a resolution of this action may help in resolving the underlying dispute.  When
14  the Trustee informed plaintiff in August, 2010, that he would oppose plaintiff's prosecution of
15  any claim that is property of the estate, plaintiff did not disclose this action which had already
16  been filed.

17  <u>DISCUSSION</u>

18    I. <u>Motion to Intervene</u>

19    Trustee Hopper seeks to intervene as a matter of right and in the alternative to
20  intervene permissively.

21    A right to intervene into an existing civil action is governed by Federal Rule of
22  Civil Procedure 24(a):

23    (a) Intervention of Right. On timely motion, the court must permit
      anyone to intervene who:
24    ....

25    (2) claims an interest relating to the property or transaction that is
      the subject of the action, and is so situated that disposing of the
26    action may as a practical matter impair or impede the movant's

1    ability to protect its interest, unless existing parties adequately
     represent that interest.
2

3    Fed. R. Civ. P. 24(a).

4            One seeking intervention as of right must adequately demonstrate the existence of

5    four separate requirements:

6            (1) the application must be timely; (2) the applicant must have a
             'significantly protectable' interest relating to the transaction that is
7            the subject of the litigation; (3) the applicant must be so situated
             that the disposition of the action may, as a practical matter, impair
8            or impede the applicant's ability to protect its interest; and (4) the
             applicant's interest must be inadequately represented by the parties
9            before the court.

10   League of United Latin American Citizens v. Wilson, 131 F.3d. 1297, 1302 (9th Cir.1997).  The

11   four part test is interpreted broadly in favor of intervention.

12           As the malicious prosecution claim may potentially be property of the estate, the

13   trustee has an interest in intervening "by virtue of his duty under the Bankruptcy Code to 'be

14   accountable for all property received' in the bankruptcy estate."  Citibank v. Park-Kenilworth

15   Industries, Inc., 109 B.R. 321, 323 (1989).

16           This action was filed on July 23, 2010.  Summons returns were filed in

17   November, 2010, and defaults were entered against all defendants except Tornga on December

18   28, 2010.  Some of the defendants have moved to set aside entry of default, and those matters

19   will be addressed after the instant motions are determined.  Therefore, the application is timely.

20   Johnson's argument that the parties have been aware of his malicious prosecution claim for years

21   is of no consequence.  The Trustee could not have attempted to intervene before the action was

22   filed.

23           The Trustee's interest is significantly protectable based on the facts known thus

24   far.  Although the issue of whether the interest is "sufficiently rooted in the pre-bankruptcy past";

25   see In re Jess, 215 B.R. 618, 620 (9th Cir. BAP 1997); will be developed in the section addressing

26   the motion to dismiss infra, the complaint alone is sufficient to identify a protectable interest.

4

1        11 U.S.C. § 541(a)(1) provides that with certain exceptions, the estate comprises

2    "all legal or equitable interests of the debtor in property as of the commencement of the case."

3    This action potentially became part of the bankruptcy estate when plaintiff filed it.

4        The FAC alleges generally that defendants tried to force plaintiff to agree to their

5    terms "prior to 2004 and continuing until the present."  (FAC ¶ 38.)  The FAC specifically

6    alleges that defendant Miner published defamatory statements about plaintiff on April 14, 2004,

7    September 15, 2004, February 6, 2005, and from March 20 to March 30, 2005.  (Id. at ¶¶ 45, 44,

8    46, 47.)  It is further alleged that other defendants published defamatory statements about

9    plaintiff from 2004 to 2006.  (Id. at ¶¶ 48, 49, 50, 51, 52.)  Plaintiff claims that defendants filed

10    "denunciations" against him in Panama with the prosecutor there in 2005.  Litigation continued

11    until 2008 when the Panamanian court dismissed defendants' criminal charges against plaintiff.

12    (Id. at ¶ 59.)  The appeals process in Panama lasted through 2009.  (Id. at ¶ 60.)

13        In fact, the FAC specifically supports the Trustee's assertion in stating that

14    plaintiff "was forced to file for bankruptcy ... due in significant part to the false criminal

15    complaints filed by the Defendants."  FAC at 3:18-20.

16        The third factor also works in the Trustee's favor.  The Trustee's contention that

17    he would have no control over the cause of action which is property of the bankruptcy estate if he

18    were not permitted to proceed as a party, has merit.  The Trustee additionally legitimately argues

19    that this action against defendants who are lot owners is interfering with the Trustee's efforts to

20    complete development of the Solarte Isla properties wherein defendants have agreed to bear the

21    financial burden of completing development for a fixed return.  This last point is also persuasive

22    in showing that the parties do not adequately represent the interest of the Trustee.  It is not in the

23    bankruptcy estate's best interest to litigate this action at all because the Trustee is attempting to

24    \\\\\

25    \\\\\

26    \\\\\

1  complete development of the site through the Trustee's negotiations with the defendant lot

2  owners.[1]

3            The court finds that all factors have been met, and the Trustee's motion to

4  intervene should be granted.

5            In the alternative, permissive intervention should be allowed.  Fed. R. Civ. P.

6  24(b) permits intervention where a third party "has a claim or defense that shares with the main

7  action a common question of law or fact."  The existence of a "common question" is liberally

8  construed.  Stallworth v. Monsanto Co., 558 F.2d 257, 265 (5th Cir.1977).  The court has

9  discretion in such a case to determine whether a third party will be allowed to intervene.

10 Donnely v. Glickman, 159 F.3d 405, 409 (9th Cir.1998).

11           Here, the Trustee's claim shares common questions of law or fact with plaintiff's

12 claims.  Whether the malicious prosecution claim is property of the bankruptcy estate is the main

13 issue that both the Trustee and plaintiff seek to resolve, but the Trustee does not have to prevail

14 on the issues before he is allowed to intervene.  In granting the motion to intervene, the

15 undersigned makes no finding that the action is property of the bankruptcy estate, (however see

16 discussion *infra*), but only that the Trustee must be permitted to intervene to protect this potential

17 asset.

18       II.  Motion to Dismiss

19            A.  Legal Standard for Motion to Dismiss

20            In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

21 a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

22 it must contain factual allegations sufficient to "raise a right to relief above the speculative

23 level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The

24

25           [1] Plaintiff's point that defendants have competent counsel to represent them who can
   adequately represent Hopper's interest misses the mark.  The question is whether those interests
   are aligned, and whether the defendants will make the same arguments as the intervenor.  The
26 court finds that these groups do not necessarily have the same objectives.

1  pleading must contain something more...than...a statement of facts that merely creates a suspicion

2  [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice

3  and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual

4  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

5  ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

6  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

7  draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

8         In considering a motion to dismiss, the court must accept as true the allegations of

9  the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

10  Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

11  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

12  89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

13  that general allegations embrace those specific facts that are necessary to support the claim.'"

14  National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

15  (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

16  Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

17  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

18         The court may consider facts established by exhibits attached to the complaint.

19  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

20  consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

21  1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

22  papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

23  1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

24  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

25         A pro se litigant is entitled to notice of the deficiencies in the complaint and an

26  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

1    Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

2    　　　　B.  Analysis

3    　　　　The Trustee moves to dismiss for failure to state a claim under Fed. R. Civ. P.

4    12(b)(6), because the cause of action is property of the bankruptcy estate and because plaintiff

5    lacks standing.

6    　　　　　　　　　1.  Property of the Bankruptcy Estate

7    　　　　The existence and scope of a debtor's interest in property are governed by state

8    law.  In re Harrell, 73 F.3d 218, 219 (9ᵗʰ Cir. 1996); U.S. v. Lawrence, 189 F.3d 838, 845 (9ᵗʰ Cir.

9    1999); In re James, 186 B.R. 262, 265 (Bankr. D. Mont. 1995) (noting state law determines

10   "whether property in debtor's hands belongs to another"); Barnhill v. Johnson, 503 U.S. 393, 112

11   S.Ct. 1386, 398 (1992) (finding that interest in property is creature of state law absent controlling

12   federal law); In re Ellis, 2008 WL 3878001, * 2-3 (Bankr. D. Mont. 2008) (acknowledging

13   property interest determined by state law, as long as not inconsistent with federal law).

14   　　　　To determine whether a claim for malicious prosecution is part of the bankruptcy

15   estate, one must examine whether it is sufficiently rooted in pre-petition conduct.  In re Jenkins,

16   410 B.R. 182, 192-93 (W.D. Va. 2008).  Under California law:

17   　　　　　　　Three elements must be pleaded and proved to establish the
18   　　　　　　tort of malicious prosecution: (1) A lawsuit was " ' "commenced
     　　　　　　by or at the direction of the defendant [which] was pursued to a
     　　　　　　legal termination in ... plaintiff's [ ] favor" ' "; (2) the prior lawsuit
19   　　　　　　" ' "was brought without probable cause" ' "; and (3) the prior
     　　　　　　lawsuit " ' "was initiated with malice." ' "

20

21   Daniels v. Robbins, 182 Cal.App.4th 204, 216, Cal.Rptr.3d 683, 693 (2010), (quoting Citi-Wide

22   Preferred Couriers, Inc. v. Golden Eagle Ins. Corp.,114 Cal.App.4th 906, 911, 8 Cal.Rptr.3d 199

23   (2003)).  "Where an underlying action is finally resolved on appeal, the issue of whether the

24   malicious prosecution plaintiff obtained a favorable termination may be determined by reference

25   to the appellate court's decision rather than that of the trial court."  Padres L.P. v. Henderson,

26   114 Cal.App.4th 495, 515, 8 Cal.Rptr.3d 584, 599 (2003).

1    The parties do not dispute that the pertinent date for determining whether the

2 malicious prosecution cause of action is property of the estate is November 4, 2008, when

3 plaintiff's Chapter 11 petition was converted to Chapter 7.  11 U.S.C. § 1115(a)(1).[2]  Therefore,

4 if the malicious prosecution action is "sufficiently rooted in the pre-bankruptcy past" as of this

5 date, it is property of the bankruptcy estate.  In re Jess, 215 B.R. 618, 620 (9th Cir. BAP 1997).

6    At hearing, the undersigned directed the parties to file supplemental briefing after

7 review of the aforementioned point made in Padres, as well as other cases discussing accrual of a

8 malicious prosecution claim, including the determination whether the claim arose pre or post-

9 petition: In re Atanasov, 221 B.R. 113 (D. N.J. 1998); Carroll v. Henry County, Georgia, 336

10 B.R. 578 (N. D. Ga. 2006); and In re Jenkins, 410 B.R. 182 (W. D. Va. 2008).  That

11 supplemental briefing has been considered.

12    In Atanasov, the cause of action for malicious prosecution was determined to have

13 arisen when the indictment was dismissed, as instructed by New Jersey law, and therefore the

14 claim arose post-petition, despite the fact that much of the activity leading toward the malicious

15 prosecution claim, such as the filing of the indictment and actions by the creditor, occurred pre-

16 petition.  Id. at 117.  Likewise in Carroll, the malicious prosecution claim did not accrue until the

17 jury found the debtor not guilty at trial, notwithstanding that the claim was based on conduct

18 which pre-dated the bankruptcy filing.  Id. at 584.  The court in Jenkins discussed whether the

19 claim was sufficiently rooted in the pre-petition conduct.  There, the criminal prosecution was

20 not initiated until after the debtor's bankruptcy petition was filed and obviously the prosecution

21 was terminated favorably to the debtor after this time.  Id. at 193.  The court distinguished

22 defendants' cited cases that did not concern malicious prosecution claims, Segal v. Rochelle, 382

23 U.S. 375, 86 S.Ct. 511 (1966), and Field v. Transcontinental Insurance Co., 219 B.R. 115 (E.D.

24

25    [2]  This section, enacted in 2005, expanded § 541 to include property that the debtor
acquires after the commencement of the case but before the case is converted to Chapter 7.  Id.,
26 subd. (a)(1).

1   Va. 1998), but which involved claims that were sufficiently rooted in pre-petition conduct.

2          In Segal, the losses underlying a loss-carryback tax refund suffered by the debtors

3   which gave rise to the claim were directly attributable to losses suffered pre-petition even though

4   the refund was issued post-petition.  The Supreme Court, finding that two key elements pointing

5   toward realizing a refund were in existence prior to the time the bankruptcy petitions were filed,

6   held that the refund was property of the estate.  The one element that came into existence after

7   the petition was filed was merely the refund, a "postponed enjoyment."  As such, this one

8   element was not important enough to qualify as an interest in property.  382 U.S. at 376-77, 86

9   S.Ct. at 511.  In Field, the duty to indemnify and the insurance company's failures to do so

10  resulted from an insurance policy in existence prior to the commencement of the case.  219 B.R.

11  at119.

12         The Jenkins court distinguished both Segal and Field because they involved

13  situations where "most, if not all, of the facts giving rise to a legal interest on the part of the

14  debtor had arisen pre-petition."  Id. at 193.  The court found of paramount importance that facts

15  vital to the establishment of interests of the debtors were established pre-petition in those cases.

16  The court distinguished malicious prosecution claims, which by their very nature require a third

17  party to engage in the act of prosecuting the debtor.  Those elements, the prosecution and the

18  favorable termination, render the claim *not* sufficiently rooted in the pre-petition conduct.  Id.

19  The court explained, "this [malicious prosecution] claim was not rooted *sufficiently* in pre-

20  petition conduct as neither the right to bring the claim nor the possibility that such a claim might

21  shortly arise was in existence 'at the commencement' of Plaintiff's bankruptcy case within the

22  meaning of § 541."  Id. at 193-94 (emphasis in original).  Finally, the Jenkins court looked at the

23  statute itself to limit property of the bankruptcy estate as delineated in § 541:

24         Moreover, this Court is reluctant to reach any conclusion which
           would alter the line Congress has drawn between pre-petition and
25         post-petition interests in § 541. Within this section Congress made
           only one provision for inclusion of a post-petition entitlement in
26         the bankruptcy estate. FN11 As to such post-petition occurrences

included within § 541(a)(5), the Rules provide an express obligation upon the debtor to file amended schedules disclosing the event, even if the case has been closed. See Bankr.R. 1007(h). Within § 541(a)(5), Congress included a limited, specific exception to the rule that property interests acquired after the filing date are not property of the estate. To go beyond that seems to expand the Code in an area in which Congress has specifically legislated, and this Court does not choose to embrace a rule or pass a judgment which would have such an effect.

FN11. That Section reads, in pertinent part: "[Property of the] estate is comprised of ... [a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—(A) by bequest, devise, or inheritance; (B) as a result of a property settlement agreement with the debtor's spouse ...; or (C) as a beneficiary of a life insurance policy or death benefit plan." 11 U.S.C. § 541(a)(5).

Id. at 194.

The Trustee cites Cole v. Pulley, 468 N.E.2d 652, 655 (Mass. App. 1984), wherein the court found a malicious prosecution case to be sufficiently rooted in the pre-bankruptcy past, despite the fact that the not guilty verdict was determined after the debtor filed for bankruptcy. The court had reasoned that the injury in a malicious prosecution claim occurs on the day the person is served with process. Aside from this case being non-binding on this court, the undersigned disagrees with its rationale, as there would be no injury unless the indictment resulted in a dismissal or not guilty verdict. The other cases cited by defendant, although finding claims were property of the estate despite the claims being inchoate on the petition date, do not involve malicious prosecution claims. The undersigned prefers to follow Atanasov, Carroll, and Jenkins because they are more on point in specifically distinguishing this type of claim.

Here, the element of termination in plaintiff's favor is of paramount importance to a malicious prosecution claim, and the claim would not exist without this primary predicate. Therefore, Segal and cases not involving malicious prosecution claims are distinguishable from

11

1 the instant case.   Without the termination of the underlying action in plaintiff's favor occurring

2 prior to the conversion date, this cause of action is not sufficiently rooted in the pre-bankruptcy

3 past.

4        The Trustee attempts to distinguish these cases as having been issued prior to the

5 2005 amendments to the bankruptcy law which changed the measuring date for petitions which

6 were later converted to Chapter 7.   The undersigned sees no distinction in the analysis based on

7 the later change in law and addition of § 1115(a)(1) to the Bankruptcy Code.   In this case, the

8 measuring date is November 4, 2008, when Johnson's petition was converted to Chapter 7.

9 Nevertheless, the rules set forth in these cases continue to apply to the new measuring date.

10        Furthermore, the elements required to establish malicious prosecution are the

11 same in California and in the states involved in the aforementioned cases.   By his own admission,

12 Johnson was investigated/prosecuted beginning in 2005, approximately three years before his

13 bankruptcy petition was converted.   The cases do not appear to consider how far ahead of the

14 bankruptcy filing or conversion the prosecution began, as the Trustee suggests.   A claim for

15 malicious prosecution requires only as its first element that an action was commenced at

16 defendant's direction.

17        Dismissal of the indictments against Johnson occurred in or around July, 2009

18 through January 7, 2010.   Pl.'s RJN, filed January 20, 2011, Ex. B (Dkt. # 43).[3]   An English

19 language version of a court order issued July 27, 2009, in regard to complainant Julie Ann Kahler

20 states that the indictments are "provisionally dismiss[ed]."   Pl.'s Oppo. to Mot. to Intervene, filed

21 January 20, 2011, Ex. C (Dkt. #44 at 56.)   The Trustee's submitted exhibits are court orders

22 translated into English.   They were submitted to the Trustee by a law firm in Panama.   Trustee's

23 Supp. Brief, filed February 17, 2011, Exs. A, B, C.  (Dkt. #60.)   All of these orders purport to

24

25        [3] Although matters outside the pleadings generally are not considered in a motion to
dismiss, the court has taken judicial notice of the proffered court orders.  A court may take
26 judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir.
1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

provisionally dismiss the indictments against Shepard Johnson.  Id.  One order, Exhibit A, states that "the preliminary proceedings are not definitely terminated, because in the event of filing new evidence, the investigation may be opened anew."  Id., Ex. A.  Another order, also translated into English, states that the criminal court "provisionally dismiss[es] these indictments filed against Shepard Johnson...."  Pl.'s Oppo. to Mot. to Intervene, Ex. C at 2.  (Dkt. # 44.)  This same language, as translated from the original Spanish, is used in the various other orders supplied to the court.  Id., Ex. B at 2, 4, 6, 7, 10, 12.  As to the court level, it is unclear whether the court issuing the orders was a trial court or an appellate court.  The Trustee argues that since all of these dismissals are provisional, it is questionable whether plaintiff has met the fourth element of a claim for malicious prosecution.

An analogous concept in American law is a dismissal without prejudice which provides that a case on the same cause of action may be brought again at a later time.  Despite this possibility, the result of such a dismissal is a final order of termination.  Furthermore, American law also provides for relief from judgment through Fed. R. Civ. P. 60(b).  Under this legal procedure, even if a dismissal were with prejudice, or not "provisional" but final, it could be re-opened under certain circumstances.  The fact that these dismissals at issue were "provisional" does not change their character.  They constitute legal terminations under Daniels.

Also specifically provided for under California law is that "[w]here an underlying action is finally resolved on appeal, the issue of whether the malicious prosecution plaintiff obtained a favorable termination may be determined by reference to the appellate court's decision rather than that of the trial court."  Padres v. L.P. v. Henderson, 114 Cal.App.4th 495, 8 Cal. Rptr.3d 584 (2003).  See also Ray v. First Federal Bank of California, 61 Cal.App.4th 315, 319,71 Cal. Rptr.2d 436, 438 (1998) (finding final termination of underlying case did not occur until conclusion of appeal); Friedman v. Stadum, 171 Cal.App.3d 775, 778 (1985) (noting general rule that malicious prosecution claim is unavailable while appeal in underlying action is pending).  It is unknown whether the Panamanian orders submitted in connection with these

motions are trial court orders or appellate court orders, but this factor is of no consequence to the

outcome.  All of the orders post-date plaintiff's conversion to Chapter 7, and therefore the last

element of plaintiff's malicious prosecution claims post-dates his measuring date.  Therefore, this

malicious prosecution claim is not property of the bankruptcy estate.  In fact, the earliest court

order is dated July 27, 2009, approximately eight months after plaintiff's measuring date of

November 4, 2008.[4]  Any later appellate court orders or other final court determination would

obviously also post-date the measuring date.

Therefore, plaintiff's malicious prosecution claims are not part of the bankruptcy

estate and the Trustee's motion to dismiss should be denied.

2. Standing

The Trustee also moves to dismiss on the ground that plaintiff has no standing

because the malicious prosecution claim is part of the bankruptcy estate.

> Upon a declaration of bankruptcy, all petitioner's property
> becomes the property of the bankruptcy estate. See 11 U.S.C. §
> 541(a). This includes "all legal or equitable interests of the debtor
> in property," id. at § 541(a)(1), which has been interpreted to
> include causes of action. See Switchboard Co. v. Westinghouse
> Elec. Corp., 789 F.2d 705, 707 (9th Cir.1986); Rowland v. Novus
> Fin. Corp., 949 F.Supp. 1447, 1453 (D.Haw.1996) (holding claims
> under the Truth in Lending Act are included as an interest under §
> 541(a)(1)). Accordingly, a bankruptcy petitioner loses standing for
> any causes of action and the estate becomes the only real party in
> interest unless the bankruptcy trustee abandons the claims. See In
> re Lopez, 283 B.R. 22, 28-29 (9th Cir.2002); In re Pace, 146 B.R.
> 562, 565-66 (9th Cir.1992).

Lane v. Vitek Real Estate Industries Group, 713 F.Supp.2d 1092, 1097 (E.D. Cal. 2010).

As plaintiff's malicious prosecution claim has been found to be outside of the

---

[4]  Although plaintiff refers to earlier dismissals occurring in 2008, neither party has
provided evidence of any orders pre-dating July 27, 2009.  See Docket entries # 43, 44, 59.
Although November 26, 2008 is referred to in an order issued on November 25, 2009, it is the
date that a criminal writ was issued, not the date of termination of the action.  In any event, it also
occurred after the measuring date.  Trustee's Supp. Brief, Ex. A at 2.  (Dkt. # 60).

1    bankruptcy estate, plaintiff has standing in this regard.

2    CONCLUSION

3              Accordingly, IT IS HEREBY RECOMMENDED that:

4              1.  Trustee's Motion to Intervene, filed January 4, 2011, as amended, (dkt. #s 25,

5    30), be granted; and

6              2.  Trustee's motion to dismiss, filed January 4, 2011, as amended, (dkt. #s 27,

7    29), be denied.

8              These findings and recommendations are submitted to the United States District

9    Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

10   fourteen (14) days after being served with these findings and recommendations, any party may

11   file written objections with the court and serve a copy on all parties.  Such a document should be

12   captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the

13   objections shall be served and filed within fourteen (14) days after service of the objections.  The

14   parties are advised that failure to file objections within the specified time may waive the right to

15   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16   DATED: 04/22/11

17                                    /s/ Gregory G. Hollows

18                                    _____
                                      GREGORY G. HOLLOWS
                                      UNITED STATES MAGISTRATE JUDGE
19   GGH:076
     Johnson1968.mtd2.wpd
20

21

22

23

24

25

26