1
2
3
4
5
6                         IN THE UNITED STATES DISTRICT COURT

7                       FOR THE EASTERN DISTRICT OF CALIFORNIA

8    SHEPARD JOHNSON,

9              Plaintiff,                    No. CIV S-10-1968 GEB GGH PS

10        vs.

11   CHESTER MITCHELL, et al.,
                                             ORDER AND
12                                           FINDINGS AND RECOMMENDATIONS

13             Defendants.

14   _____/

15        Plaintiff first initiated this diversity action for malicious prosecution and civil

16   conspiracy to commit malicious prosecution on July 23, 2010 and is currently proceeding with

17   the third amended complaint filed on November 6, 2011.  (See Dkt. No. 119.)

18        Presently pending before the court is defendant Martha Thomas's motion to

19   dismiss plaintiff's third amended complaint for lack of personal jurisdiction, originally filed on

20   December 8, 2011 and noticed for hearing on February 9, 2012.  (Dkt. Nos. 131, 141.)  In

21   response to that motion, plaintiff filed a motion for leave to conduct jurisdictional discovery, or

22   in the alternative a 30-day extension to respond to defendant Thomas's motion to dismiss, which

23   came on regularly for hearing on January 26, 2012.  (Dkt. No. 143.)  After hearing oral argument,

24   the court vacated the February 9, 2012 hearing on defendant Thomas's motion to dismiss,

25   granted plaintiff leave to file a response to defendant Thomas's motion no later than February 16,

26   2012, and permitted defendant Thomas to file a reply brief by February 23, 2012, after which the

                                              1

1  motion was submitted on the record.  (See Dkt. No. 154.)  Plaintiff's motion for jurisdictional

2  discovery regarding defendant Thomas was also taken under submission.  (Id.)  After extensive

3  briefing by the parties, these motions are now ripe for resolution.

4          However, before the court can reach the merits of the above-mentioned motions,

5  the court is compelled to address the issues raised with respect to subject matter jurisdiction.  On

6  January 26, 2012, the court also conducted an initial status conference.  In the joint status report,

7  a group of defendants indicated that they dispute federal subject matter jurisdiction based on

8  plaintiff's joinder of U.S. citizen defendants domiciled abroad.  (Dkt. No. 149 at 3.)  After

9  extensive discussion on the record at the status conference, the court granted plaintiff until

10  February 16, 2012 to either (a) file a brief, limited to 10 pages, addressing the propriety of

11  subject matter jurisdiction in this case, or (b) move to dismiss the U.S. citizen defendants

12  domiciled abroad pursuant to Fed. R. Civ. P. 21.  (Dkt. No. 154.)  Plaintiff filed a brief regarding

13  subject matter jurisdiction on February 16, 2012 (dkt. no. 157) and another "corrected brief"

14  regarding subject matter jurisdiction on February 21, 2012 (dkt. no. 162).

15          Finally, plaintiff also filed a response to the court's order to show cause why

16  several defendants should not be dismissed from the action pursuant to Fed. R. Civ. P. 41(b) for

17  plaintiff's failure to prosecute and follow court orders regarding service of process.  (Dkt. Nos.

18  154, 167.)

19          After consideration of the briefing submitted, the parties' oral arguments, the

20  court's record in this matter, and the applicable law, the court FINDS AS FOLLOWS:

21  BACKGROUND

22          Before proceeding to the motions and substantive issues raised, a review of the

23  background facts and procedural history is appropriate.

24          Factual Background

25          Plaintiff, a citizen of California, is a real estate developer who claims that the

26  defendants purchased lots for a planned unit development on an island in Panama.  (See Third

2

1    Amended Complaint, Dkt. No. 119 ["TAC"] at 2-3.)  Plaintiff alleges that defendants did not

2    want to be subject to the Conditions, Covenants, and Restrictions ("CC&Rs") for the

3    development, and so rather than settling the matter by way of a contract dispute, defendants

4    "banded together and launched a barrage of deliberate falsehoods, and engaged in wrongful

5    conduct...aimed at upsetting and intimidating him, destroying his reputation and business,

6    disrupting relations with other lot owners, and discouraging prospective purchasers."  (TAC at 3-

7    4.)  According to plaintiff, defendants' campaign of defamation was conducted primarily over the

8    Internet.  (TAC at 4.)  In particular, plaintiff alleges that defendants "posted in excess of 150

9    messages on the Internet by and through an account with an internet provider based in California

10   and on sites maintained within the State of California...to attract and solicit fellow conspirators."

11   (TAC at 16.)  Defendants also allegedly initiated criminal proceedings against him in the Panama

12   courts which were purportedly later dismissed, and which are the subject of plaintiff's malicious

13   prosecution and conspiracy claims in this litigation.  (TAC at 4-6.)  Plaintiff alleges that he was

14   forced to file for bankruptcy on July 3, 2007 "due in significant part to the false criminal

15   complaints filed by Defendants."  (TAC at 5.)

16            Procedural Background

17            Plaintiff initially filed this lawsuit on July 23, 2010.  (Dkt. No. 1.)  On October 28,

18   2010, plaintiff filed a 41-page first amended complaint joining additional defendants and

19   terminating claims against one defendant.  (Dkt. No. 5.)  Subsequently, on December 23, 2010,

20   plaintiff requested entry of default as to various defendants, (dkt. nos. 9-23) and the clerk entered

21   their default on December 28, 2010 (dkt. no. 24).  Shortly after, on January 4, 2011, the trustee

22   over plaintiff's bankruptcy estate filed a motion to intervene on the grounds that the claims

23   asserted by plaintiff in this litigation were property of the bankruptcy estate.  (Dkt. Nos. 25, 30.)

24   The trustee simultaneously moved to dismiss the action, contending that plaintiff lacks standing

25   to bring claims that are property of the bankruptcy estate.  (Dkt. Nos. 27, 29.)  After oral

26   argument and further supplemental briefing, the court ultimately granted the trustee's motion to

1   intervene, but denied the trustee's motion to dismiss, concluding that plaintiff's claims were not

2   part of the bankruptcy estate.  (Dkt. Nos. 62, 68.)[1]  In the meantime, several defendants had

3   moved to set aside the entry of default against them.  (Dkt. Nos. 36, 38, 39.)

4           Subsequently, on July 18, 2011, plaintiff filed a motion for leave to file a second

5   amended complaint.  (Dkt. No. 71.)  Plaintiff contended that further amendment was required to

6   add 10 additional defendants, clarify that plaintiff's complaint included a separate malicious

7   prosecution cause of action for each of the named defendants, remove legal authorities to

8   simplify the complaint, and to add details to the civil conspiracy cause of action.  (Dkt. No. 71 at

9   3.)  On August 23, 2011, the court found that plaintiff failed to properly serve process on several

10  defendants.  The court also granted plaintiff leave to file a second amended complaint, and

11  ordered plaintiff to complete service of process within 60 days.  In light of plaintiff's improper

12  service and the grant of further leave to amend, the court set aside the defaults previously

13  entered.  The court additionally cautioned plaintiff that "amendments to the complaint in this

14  case are at an end."  (See Dkt. No. 78.)  That same day, plaintiff filed a 69-page second amended

15  complaint, followed by another 69-page "corrected" second amended complaint filed on August

16  24, 2011.  (Dkt. Nos. 79, 80.)

17          On October 8, 2011, plaintiff filed yet another motion for leave to file a third

18  amended complaint.  (Dkt. No. 111.)  Plaintiff argued that further amendment was necessary to

19  add 6 additional defendants, remove plaintiff's demand for a jury trial, and clean up

20  typographical errors.  (Dkt. No. 111 at 3.)  Plaintiff explained that he only discovered the

21  identities of additional alleged conspirators in an e-mail attached to defendant Hermanson's

22  purported motion to dismiss, which was filed after plaintiff filed his second amended complaint.

23  (Dkt. No. 111 at 2, 10.)  In addition to plaintiff's motion for leave to amend in this case, plaintiff

24

25          [1] The court's analysis with respect to the trustee's motions is set forth in detail in the
    court's April 25, 2011 findings and recommendations (see dkt. no. 62), which were adopted by
26  the district judge on June 7, 2011 (see dkt. no. 68).

                                            4

1    also filed a new case including the additional defendants in the event this court failed to grant

2    plaintiff leave to amend in the instant case.  (See 2:11-CV-02629-KJM-CKD, Dkt. No. 5 at 3.)[2]

3                   Subsequently, on November 3, 2011, the court granted plaintiff leave to file a

4    third amended complaint, reasoning that the "newly discovered information is sufficient to

5    overcome the court's reluctance to allow another amendment to the complaint."  (Dkt. No. 118 at

6    2.)  However, the court also noted that, "as plaintiff himself acknowledges, the case needs to

7    move forward, and leave to amend based on this newly discovered information should not be

8    construed as a license for further amendments."  (Dkt. No. 118 at 2-3.)  The court further ordered

9    plaintiff to complete service of process on all defendants, including the newly-added defendants,

10   within 28 days.  (Dkt. No. 118 at 3.)  The court also set a status conference for January 26, 2012

11   and stayed all discovery until the status conference.  (Dkt. No. 118 at 5-7.)

12                  On November 6, 2011, plaintiff filed the operative 69-page third amended

13   complaint.  (See Dkt. No. 119.)  The third amended complaint joined six additional defendants

14   (Maurine Smith, Judith Cohen, Susan Fine, Kim Parsons, Bobby Hamond, and the Solarte Inn

15   Corporation).  Although all individual defendants were alleged to be citizens of the United

16   States, defendants Smith, Cohen, and Fine, were alleged to reside in the Republic of Panama.

17   (See Dkt. No. 119 at 2-3.)

18                  The subject motions followed.  Before turning to those motions and other

19   substantive matters, the court, as it is required to do, first addresses the issue of federal subject

20   matter jurisdiction.

21   FEDERAL SUBJECT MATTER JURISDICTION

22                  Even if a party does not question the court's subject matter jurisdiction, the court

23   is required to raise and address the issue sua sponte.  See FW/PBS, Inc. v. City of Dallas, 493

24   U.S. 215, 230-31 (1990) ("The federal courts are under an independent obligation to examine

25   ───────────────────

26   [2] Plaintiff's new case was ultimately dismissed as duplicative on January 5, 2012.  (See 2:11-CV-02629-KJM-CKD, Dkt. Nos. 4, 7-8.)

1   their own jurisdiction....").  In this case, a group of defendants raised the issue in the joint status

2   report by indicating that they dispute federal subject matter jurisdiction based on the presence of

3   U.S. citizen defendants residing abroad.  (Dkt. No. 149 at 3.)

4          The United States Supreme Court held that United States citizens domiciled in a

5   foreign country cannot be parties to a diversity action in federal court.  See Newman-Green, Inc.

6   v. Alfonzo-Larrain, 490 U.S. 826, 828-29 (1989).  In Newman-Green, Inc., an Illinois

7   corporation brought a state-law contract action in federal district court against a Venezuelan

8   corporation, four Venezuelan citizens, and William L. Bettison, a United States citizen domiciled

9   in Venezuela.  Id. at 828.  The U.S. Supreme Court explained that Bettison's presence destroyed

10  complete diversity in the action:

11          In order to be a citizen of a State within the meaning of the
            diversity statute, a natural person must both be a citizen of the
12          United States and be domiciled within the State...The problem in
            this case is that Bettison, although a United States citizen, has no
13          domicile in any State.  He is therefore "stateless" for purposes of §
            1332(a)(3).  Subsection 1332(a)(2), which confers jurisdiction in
14          the District Court when a citizen of a State sues aliens only, also
            could not be satisfied because Bettison is a United States citizen.
15          When a plaintiff sues more than one defendant in a diversity
            action, the plaintiff must meet the requirements of the diversity
16          statute for each defendant or face dismissal...Here, Bettison's
            "stateless" status destroyed complete diversity under § 1332(a)(3),
17          and his United States citizenship destroyed complete diversity
            under § 1332(a)(2).

18

19  Id. at 828-29 (emphasis in original).

20          In the instant case, plaintiff alleged that "defendant Maurine E. Smith is a citizen

21  of the United States and resides in the Republic of Panama, defendant Judith A. Cohen is a

22  citizen of the United States and resides in the Republic of Panama, defendant Susan Fine is a

23  citizen of the United States and resides in the Republic of Panama and possibly the state of

24  Oregon."  (TAC at 2-3.)  While plaintiff acknowledges that the presence of U.S. citizen

25  defendants domiciled abroad would destroy complete diversity, plaintiff argues that residence is

26  not the same as domicile and that there is no evidence that defendants Smith, Cohen, and Fine

6

1    are domiciled in Panama.

2           The Ninth Circuit has established several principles to guide the inquiry of where

3    a party is domiciled:

4                    First, the party asserting diversity jurisdiction bears the burden of
                     proof...Second, a person is 'domiciled' in a location where he or
5                    she has established a 'fixed habitation or abode in a particular
                     place, and [intends] to remain there permanently or
6                    indefinitely.'...Third, the existence of domicile for purposes of
                     diversity is determined as of the time the lawsuit is filed...Finally, a
7                    person's old domicile is not lost until a new one is acquired...A
                     change in domicile requires the confluence of (a) physical presence
8                    at the new location with (b) an intention to remain there
                     indefinitely."...Courts in other jurisdictions have recognized
9                    additional principles relevant to our present analysis.  The courts
                     have held that the determination of an individual's domicile
10                   involves a number of factors (no single factor controlling),
                     including: current residence, voting registration and voting
11                   practices, location of personal and real property, location of
                     brokerage and bank accounts, location of spouse and family,
12                   membership in unions and other organizations, place of
                     employment or business, driver's license and automobile
13                   registration, and payment of taxes...The courts have also stated that
                     domicile is evaluated in terms of 'objective facts,' and that
14                   'statements of intent are entitled to little weight when in conflict
                     with facts.'

15

16   Lew v. Moss, 797 F.2d 747, 749-50 (9th Cir. 1986) (internal citations omitted).

17          Plaintiff correctly points out that domicile is not the same as residency.  For

18   example, a United States citizen may be residing in a particular country temporarily for a specific

19   purpose, such as a temporary work assignment, intending to return permanently to a U.S. state

20   after a definite period of time.  However, a party's place of residence is prima facie evidence of

21   domicile.  State Farm Mut. Automobile Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994).

22   Moreover, in this case, the language of plaintiff's complaint can only be fairly construed as

23   asserting that the above-mentioned defendants are residing in Panama indefinitely.  Indeed, the

24   third amended complaint contains no facts suggesting that these defendants are only in Panama

25   on a temporary basis and intend to return to the United States.

26   \\\\\

1    As outlined above, the party asserting diversity jurisdiction generally bears the

2  burden of proving a party's domicile to establish complete diversity.  Lew, 797 F.2d at 749.

3  However, in reliance on Lew, plaintiff attempts to shift that burden by arguing that there is

4  insufficient evidence that the above-mentioned defendants changed their domicile to Panama.  As

5  will be discussed below, plaintiff's reliance on Lew in this regard is misplaced.

6    In Lew, the plaintiff filed a diversity action against the defendant on November 1,

7  1984.  Lew, 797 F.2d at 748.  The defendant conceded facts showing that his established

8  domicile was California at least until September of 1984 when he moved to Hong Kong, but

9  argued that he was domiciled in Hong Kong at the time the action was filed.  Id. at 748, 751.  The

10  court reasoned that, because the defendant had conceded that he lived in California at least until

11  September of 1984, a presumption in favor of the defendant's established domicile (California)

12  as against his allegedly newly acquired domicile (Hong Kong) applied.  Id. at 751.  However, the

13  court noted that the presumption only shifted the burden of production of evidence, and that the

14  plaintiff continued to have the burden of proof.  Id.  Nevertheless, the court found that the

15  defendant failed to meet his burden of production, because his actions failed to establish that he

16  was physically located in Hong Kong on November 1, 1984 or that he intended to remain there

17  indefinitely.  Id. at 752.

18    By contrast, in this case, defendants Smith, Cohen, or Fine have not conceded to

19  any facts showing that they were domiciled in a particular U.S. state until a specified date.[3]

20  Other than plaintiff's conclusory assertions in his current briefing and declaration, there is no

21  clear evidence of these defendants' domicile in a particular U.S. state before the court.  Simply

22  put, plaintiff cannot shift the burden of production to these defendants on the basis of a

23

24    [3]  Plaintiff points out that defendant Cohen stated in her answer that she "does not
   contend jurisdiction."  (Dkt. No. 138 at 1.)  This statement, even if construed as asserting that
25  defendant Cohen does not contest subject matter jurisdiction, is irrelevant, because it is well
   established that subject matter jurisdiction cannot be conferred by consent of the parties.  Peretz
26  v. U.S., 501 U.S. 923, 950 (1991).

1   presumption as to "established domicile," because no such domicile has been established.

2   Instead, in this case, the burden of production, as well as the burden of persuasion, remain

3   squarely on plaintiff.  Stated differently, it is not defendants Smith, Cohen, or Fine who are

4   required to show that they are domiciled in Panama or that they changed their domicile to

5   Panama; it is plaintiff who has to show that these defendants are domiciled in a U.S. state other

6   than California.  Based on plaintiff's allegations in the third amended complaint and the current

7   evidence before the court, it would appear that these U.S. citizen defendants in Panama destroy

8   complete diversity.[4]

9       The court recognizes that defective allegations of jurisdiction may ordinarily be

10  cured through amendment.  See Blue Ridge Ins. Co. v. Stanewich, 142 F.3d 1145, 1148 (9th Cir.

11  1998).  However, for the reasons outlined below, the court finds that further amendment would

12  be inappropriate given the posture of this case.

13      As an initial matter, plaintiff has not shown that he can affirmatively allege,

14  within the strictures of Rule 11, that the above-mentioned defendants are domiciled in a

15  particular U.S. state even if he were given leave to amend.  "[T]o avoid dismissal for lack of

16  subject matter jurisdiction, the plaintiff must enlarge the record to show the citizenship of each

17  party as of the date that the complaint was filed."  Blue Ridge Ins. Co., 142 F.3d at 1148.  Such

18  amended allegations must be supported by prima facie proof.  Id. at 1148 n.3.  Plaintiff's briefing

19  and declaration make clear that he cannot presently make such a showing.

20      With respect to defendant Cohen, plaintiff points out that her December 9, 2011

21  answer to plaintiff's complaint indicated that she "*temporarily* resides in New Jersey," that "[h]er

22  name is not on any real estate title in the United States nor Panama," and that it makes no

23

24  _____

    [4]  The court is aware that the third amended complaint alleges that "defendant Susan Fine
25  is a citizen of the United States and resides in the Republic of Panama and *possibly the state of
    Oregon*."  (TAC at 3 (emphasis added).)  However, the reference to Oregon is speculative and
26  does nothing to assure the court that defendant Fine is a diverse defendant.  Again, it is plaintiff's
    burden to show that defendant Fine is domiciled in a U.S. state other than California.

reference to Panama residency or domiciliary.  (<u>See</u> Dkt. No. 138 (emphasis added).)  Plaintiff also states that, to the best of his knowledge, defendant Cohen "was living in and domiciled in Nevada prior to moving to Panama and currently resides in New Jersey."  (Dkt. No. 162 at 3, 11.) As to defendant Smith, plaintiff states that:

> To the best of my knowledge, when I met Maurine Smith, in approximately 1995, she was a citizen of Nevada and residing in Nevada.  She was domiciled in Nevada, she then moved to California, was married and later divorced.  Her location in California changed a number of times.  To the best my knowledge [sic], Smith never changed domicile from Nevada.  Defendant Maurine Smith is a citizen of the United States and resides in the Republic of Panama *possibly part-time.  I know of no evidence that supports Maurine Smith is domiciled in Panama.*

(Dkt. No. 162 at 3-4, 11 (emphasis added).)  Finally, in regards to defendant Fine, plaintiff asserts that she is domiciled in *either Colorado or Oregon* and has built a home on her lot in Panama.  Plaintiff also refers to *March 7, 2007 deposition testimony* where defendant Fine indicated that she spends six months a year on Solarte in Panama.  Plaintiff indicates that he knows of no evidence that defendant Fine is domiciled in Panama.  (Dkt. No. 162 at 4-5, 12 (emphasis added).)

      As is evident from the above, plaintiff's contentions are conclusory and largely speculative.  Once a disputed issue, evaluation of domicile becomes a complicated analysis of various factors, including residence, voting patterns, location of assets, etc.  Plaintiff offers no prima facie proof regarding these factors, nor any evidence that he has conducted any type of informal investigation regarding these factors.  Indeed, plaintiff offers no prima facie proof, other than his own conclusory assertions, that establish these defendants' domicile in a particular U.S. state at the time they were joined as parties to this litigation.  Plaintiff implicitly concedes as much, because he requests the court to grant jurisdictional discovery or alternatively to continue this matter "in the event sufficient evidence surfaces" regarding these defendants' domiciles. (Dkt. No. 162 at 9.)

\\\\\

While the court may have been inclined to grant plaintiff leave to conduct jurisdictional discovery regarding domicile in the first few months after the action was filed, the court finds that it would be wholly inappropriate at this junction.  As the court extensively outlined above, this action has already been pending since July 23, 2010, the pleadings are not settled, and the case has not yet been scheduled for trial.  This is primarily because the court, in light of plaintiff's pro se status, has given plaintiff multiple opportunities to amend his complaint.  However, at some point, amendment must come to an end and the case must proceed.

The court was prepared to give plaintiff the benefit of the doubt by allowing the recent joinder of additional defendants based on alleged newly discovered evidence, but not if this would result in multiple ancillary disputes as to domicile and destroy complete diversity.  Allowing plaintiff to now embark on jurisdictional discovery as to domicile will further derail this case, because the case cannot proceed until the court can be assured of the propriety of subject matter jurisdiction.  It would also necessarily result in evidentiary hearings and further amendment of the complaint, which the court already held will not be countenanced.  These additional delays will significantly prejudice the defendants, who deserve to proceed to the merits and have their day in court as well.

Based on the record currently before the court, the joinder of defendants Smith, Cohen, and Fine destroy complete diversity.  Although this could result in dismissal of the entire case for lack of subject matter jurisdiction, a less drastic remedy is available here.  A court may, in the absence of prejudice to the other parties, dismiss dispensable nondiverse parties pursuant to Fed. R. Civ. P. 21 to cure the jurisdictional defects.  Newman-Green, Inc., 490 U.S. at 833, 837-38.  Fed. R. Civ. P. 21 provides, in part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Here, the above-mentioned defendants are not indispensable parties.  Therefore, the court will recommend that plaintiff's claims against defendants Judith Cohen, Maurine Smith, and Susan Fine be dismissed without prejudice pursuant to Fed. R. Civ. P. 21.

1    In the interests of efficiency, and assuming that any defects in subject matter

2 jurisdiction are cured by the court's recommendation above, the court proceeds to the motions

3 and other matters pending before the court.

4    DEFENDANT THOMAS'S MOTION TO DISMISS FOR LACK OF

5    PERSONAL JURISDICTION

6    Background

7    The third amended complaint contains limited allegations specific to defendant

8 Thomas, which are set forth here.  Plaintiff alleges that Thomas is a citizen of Colorado.  (TAC

9 at 2.)  In September, 2005, with the assistance of defendant David Miner, Thomas retained the

10 services of a Panamanian attorney, defendant Rojelio Arosemena, and made a declaration in

11 support of a criminal complaint against plaintiff.  (TAC at 50.)  Then, on October 3, 2005,

12 Arosemena filed an allegedly false declaration (denunciation) and criminal complaint against

13 plaintiff in Panama on Thomas's behalf.  (TAC at 50-51.)  Subsequently, in April, 2006, again

14 with the assistance of Miner, Thomas retained another Panamanian attorney, defendant Manuel

15 Berrocal, with "the sole purpose to acquire the title to our land and finalize our lawsuits and/or

16 criminal complaints through an amicable agreement."  (TAC at 51.)  After the Panama court

17 purportedly dismissed Thomas's criminal case in April, 2008, Thomas appealed, but the Panama

18 appellate court apparently ultimately upheld the dismissal and found in favor of plaintiff.  (TAC

19 at 51-52.)  Plaintiff contends that Thomas falsely and maliciously instituted a criminal action

20 against plaintiff without probable cause.  (TAC at 52.)

21    On December 8, 2011, Thomas filed a motion to dismiss plaintiff's third amended

22 complaint for lack of personal jurisdiction.  (Dkt. No. 131.)  In support of that motion, Thomas

23 filed an affidavit stating that she has never been a resident of California; does not conduct

24 business or travel regularly to California; has never owned or possessed property in California;

25 has never paid taxes in California; has never had a bank account in California; has never

26 registered to vote in California; has never been employed in California; has never done business

12

1   with an entity in California; has never had a telephone, address, or postal listing in California;

2   has never made a court appearance in California; and has never posted any messages on any

3   public Internet site regarding plaintiff or his activity in Panama, nor has she encouraged or

4   approved of any such messages that may have been posted by anyone else.  (See Dkt. No. 132-1,

5   ¶¶ 1-7, 9.)

6          Thomas also stated that she had taken no action in California with respect to

7   plaintiff's allegations – the underlying property dispute between herself and plaintiff was over

8   property located in Panama, the negotiation and agreement for purchase and sale of the property

9   occurred in Panama, and the alleged malicious prosecution at issue was the filing of a criminal

10  complaint against plaintiff in Panama.  (Id. ¶ 8.)  She further explained that litigation in

11  California would be an extreme hardship to her, given her diagnosis of Stage III C ovarian cancer

12  and the fact that her medical condition and treatment would make it difficult, if not impossible,

13  to travel to California for deposition and trial.  (Id. ¶ 10.)

14         Plaintiff filed a 42-page opposition to defendant Thomas's motion along with

15  numerous multi-page exhibits, declarations, and requests for judicial notice.  (Dkt. Nos. 158,

16  158-1, 158-2, 158-3, 158-4, 158-5, 159, 159-1, 159-2, 159-3, 160, 160-1, 160-2, 160-3, 160-4,

17  161, 163).[5]  Subsequently, on February 24, 2012, plaintiff also filed a motion to continue

18  decision on defendant Thomas's motion (dkt. no. 168) to allow plaintiff to submit full deposition

19  transcripts in accordance with the Local Rules, remedy the objections raised by defendant

20  Thomas with respect to plaintiff's evidence submitted, and for the court to conduct an oral

21  hearing on the motion.

22         The court has reviewed all of the material submitted by plaintiff.  For the reasons

23  discussed below, the court concludes that plaintiff has not made a colorable showing that this

24

25         [5] Plaintiff's briefing in support of his motion for leave to conduct jurisdictional discovery
    regarding defendant Thomas (dkt. nos. 143, 150) also offered facts, exhibits, and argument with
26  respect to personal jurisdiction over defendant Thomas.

1    court has personal jurisdiction over defendant Thomas, even if all plaintiff's submitted evidence

2    were considered.  Accordingly, it is not necessary to reach defendant Thomas's objections.

3    Furthermore, given the extensive briefing and voluminous exhibits submitted by plaintiff, the

4    court finds that further oral argument on this already-submitted motion would not be of material

5    assistance.  Accordingly, the court will proceed to decide the motion on the record before it.

6                        Principles of Personal Jurisdiction

7                        The plaintiff generally bears the burden of establishing the district court's

8    personal jurisdiction over the defendant.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell &

9    Clements Ltd., 328 F.3d 1122, 1128-29 (9th Cir. 2003).  "A non-resident defendant may be

10   subject to the personal jurisdiction of the court where the defendant has either a continuous and

11   systematic presence in the state (general jurisdiction), or minimum contacts with the forum state

12   such that the exercise of jurisdiction 'does not offend traditional notions of fair play and

13   substantial justice' (specific jurisdiction)."  Martinez v. Manheim Central California, 2011 WL

14   1466684, at *1 (E.D. Cal. Apr. 18, 2011) (citing Int'l Shoe Co. v. Washington, 325 U.S. 310, 316

15   (1945)).  "Where there is no federal statute applicable to determine personal jurisdiction, a

16   district court should apply the law of the state where the court is located."  Id. (citing

17   Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)).  "California law

18   requires only that the exercise of personal jurisdiction comply with federal due process

19   requirements."  Id. (citing Cal. Civ. Proc. Code § 410.10 and Fred Martin Motor Co., 374 F.3d at

20   800-01).

21                       General personal jurisdiction exists when the defendant engages in "continuous

22   and systematic general business contacts...that approximate physical presence in the forum state."

23   Fred Martin Motor Co., 374 F.3d at 801.  "This is an exacting standard, as it should be, because a

24   finding of general jurisdiction permits a defendant to be haled into court in the forum state to

25   answer for any of its activities anywhere in the world."  Id.; see also Helicopteros Nacionales de

26   Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).

1         Alternatively, "[s]pecific personal jurisdiction exists where a case arises out of

2  forum-related acts." <u>Martinez</u>, 2011 WL 1466684, at *2.  The Ninth Circuit utilizes a three-

3  prong test to determine whether specific jurisdiction exists:

4                       (1) The non-resident defendant must purposefully direct his
                       activities or consummate some transaction with the forum or
5                       resident thereof; or perform some act by which he purposefully
                       avails himself of the privilege of conducting activities in the forum,
6                       thereby invoking the benefits and protections of its laws;

7                       (2) the claim must be one which arises out of or relates to the
                       defendant's forum-related activities; and
8

9                       (3) the exercise of jurisdiction must comport with fair play and
                       substantial justice, i.e. it must be reasonable.

10  <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199, 1205-06 (9th

11  Cir. 2006).  "The plaintiff bears the burden of satisfying the first two prongs of the test...If the

12  plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum

13  state.  If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to

14  the defendant to present a compelling case that the exercise of jurisdiction would not be

15  reasonable." <u>Fred Martin Motor Co.</u>, 374 F.3d at 802 (internal citations omitted).

16         <u>Discussion</u>

17         In this case, the parties agree that this court cannot exercise general personal

18  jurisdiction over defendant Thomas.  It is clear that she does not have the requisite continuous

19  and systematic contacts with California that approximate a physical presence.  Instead, plaintiff

20  claims that the court has specific personal jurisdiction over defendant Thomas.  The court

21  therefore proceeds to analyze plaintiff's claim under the Ninth Circuit's three-prong test for

22  specific personal jurisdiction. <u>Yahoo! Inc.</u>, 433 F.3d at 1205-06.

23         <u>First Prong of the Specific Personal Jurisdiction Test: Purposeful Direction</u>

24         Under the first prong, a plaintiff "must establish that [the defendant] either

25  purposefully availed [herself] of the privilege of conducting activities in California, or

26  purposefully directed [her] activities toward California...A purposeful availment analysis is most

1  often used in suits sounding in contract...A purposeful direction analysis, on the other hand, is

2  most often used in suits sounding in tort."  Fred Martin Motor Co., 374 F.3d at 802; see also

3  Yahoo! Inc., 433 F.3d at 1206.  Here, given plaintiff's tortious claims of malicious prosecution

4  and civil conspiracy to commit malicious prosecution, plaintiff correctly asserts that a purposeful

5  direction analysis should be utilized in this case.  Indeed, defendant Thomas did not enter into a

6  contract or conduct business in California, and she received no benefit, privilege, or protection

7  from California that would be susceptible to a purposeful availment analysis.  Accordingly, a

8  purposeful direction analysis is appropriate.

9         The Ninth Circuit evaluates purposeful direction under the three-part "effects" test

10  outlined in the U.S. Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984).  Fred

11  Martin Motor Co., 374 F.3d at 803; Yahoo! Inc., 433 F.3d at 1206.  In Calder, the plaintiff sued

12  Florida-based defendants in a California court claiming that she had been libeled in an article

13  written and edited in Florida and then published in a national magazine with a large circulation in

14  California.  Calder, 465 U.S. at 784.  In finding that the California court had personal jurisdiction

15  over the Florida defendants, the U.S. Supreme Court explained that:

16
17
18
19
20

> The alleged libelous story concerned the California activities of a
> California resident.  It impugned the professionalism of an
> entertainer whose television career was centered in California.  The
> article was drawn from California sources, and the brunt of the
> harm...was suffered in California.  In sum, California is the focal
> point both of the story and of the harm suffered.  Jurisdiction over
> [the defendants] is therefore proper in California based on the
> "effects" of their Florida conduct in California.

21  Id. at 788-89.  The Supreme Court further stated that the defendants knew that the article would

22  have a devastating impact upon plaintiff in California, given that she lives and works there and

23  that the magazine has its largest circulation in that state.  Id. at 789-90.

24         Thus, "Calder stands for the proposition that [the first prong of the test for

25  specific jurisdiction] is satisfied even by a defendant whose only contact with the forum state is

26  the purposeful direction of a foreign act having effect in the forum state."  Fred Martin Motor

1   Co., 374 F.3d at 803 (internal citations omitted).  To find purposeful direction under Calder, the

2   defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3)

3   causing harm that the defendant knows is likely to be suffered in the forum state."  Id.; see also

4   Yahoo! Inc., 433 F.3d at 1206.

5          In this case, plaintiff essentially points to two types of contacts by defendant

6   Thomas that he contends support purposeful direction: (1) the filing of a criminal action in

7   Panama against plaintiff and (b) internet postings and communications directed to California by

8   defendants Miner, Fine, Berrocal, and Arosemena purportedly acting as Thomas's agents.  Both

9   types of contacts will be addressed below.

10                          *(1) Criminal Action in Panama*

11         Plaintiff argues that purposeful direction is shown by Thomas's filing of a

12  criminal action against plaintiff, a California resident, resulting in various alleged damages

13  suffered in California, including plaintiff having to file bankruptcy in California, losing 35 years

14  worth of work and savings in California, owing creditors approximately $3.5 million in

15  California, damages to plaintiff's reputation in California, damage to plaintiff's credit in

16  California, and forcing plaintiff to close his business in California.  (See Declaration of Shepard

17  Johnson, Dkt. No. 143-1, ¶¶ 25-26.)  Additionally, plaintiff states that the title to Thomas's

18  property in Panama was eventually controlled by a California bankruptcy trustee after plaintiff

19  declared bankruptcy.  (Id. ¶ 27.)

20         Even though Thomas's filing of a criminal action is clearly an intentional act and

21  Thomas arguably could have foreseen that plaintiff would suffer some harm in California,

22  plaintiff fails to show how Thomas's criminal action was expressly aimed at California.  To the

23  contrary, Thomas allegedly filed the criminal action and supporting declaration in Panama to

24  pressure plaintiff into issuing her title without restrictions to her Panamanian property.

25         The mere fact that plaintiff may have suffered some resulting damages in

26  California is insufficient to show that the action was expressly aimed at California so as to

17

1    establish the requisite minimum contacts.  "Although it has been argued that foreseeability of

2    causing *injury* in another State should be sufficient to establish such contacts there when policy

3    considerations so require, the Court has consistently held that this kind of foreseeability is not a

4    sufficient benchmark for exercising personal jurisdiction."  Burger King Corp. v. Rudzewicz,

5    471 U.S. 462, 474 (1985) (internal citations omitted); see also Bancroft & Masters, Inc. v.

6    Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000) ("Subsequent cases have struggled

7    somewhat with *Calder*'s import, recognizing that the case cannot stand for the broad proposition

8    that a foreign act with foreseeable effects in the forum state always gives rise to specific

9    jurisdiction"); Brayton Purcell LLP v. Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010) ("This

10   Court has emphasized that 'something more' than mere foreseeability is required in order to

11   justify the assertion of personal jurisdiction,...and that 'something more' means conduct

12   expressly aimed at the forum....").

13            In support of plaintiff's proposition that Thomas's criminal action was expressly

14   aimed at California, plaintiff cites various Ninth Circuit authorities holding that the express

15   aiming requirement is satisfied when the defendant individually targeted a known forum resident.

16   See e.g. Bancroft & Masters, Inc., 223 F.3d at 1087; Yahoo! Inc., 433 F.3d at 1209; Brayton

17   Purcell LLP, 606 F.3d at 1129-31.  However, in each of those cases, the defendant's wrongful

18   conduct had individually targeted the plaintiff's business, activities, or presence in California.

19            In Bancroft & Masters, Inc., the plaintiff was a small California company that had

20   registered an Internet domain name.  Bancroft & Masters, Inc., 223 F.3d at 1084.  The Georgia-

21   based defendant sent a letter to the official domain name registrar in Virginia, challenging the

22   plaintiff's use of that domain name.  Id. at 1085.  Subsequently, the plaintiff sought a declaratory

23   judgment against the defendant in a California district court to establish ownership of the domain

24   name.  Id.  The Ninth Circuit ultimately concluded that personal jurisdiction existed over the

25   defendant, even though the letter was never sent to California.  Id. at 1085, 1087-88.  It reasoned

26   that the letter was expressly aimed at California, because it individually targeted plaintiff's

1   business in California.  Id. at 1088.  This is because the letter triggered the registrar's dispute

2   resolution procedures, which forced plaintiff to either bring suit or lose control of its website.  Id.

3   at 1085, 1087.  Thus, the letter was sent "for the very purpose of having [its] consequences felt"

4   on the plaintiff's business in California.  Id. at 1088.

5          In Yahoo! Inc., plaintiff Yahoo! brought suit in federal district court against two

6   French entities seeking a declaration that two interim orders by a French court were

7   unenforceable under the First Amendment.  Yahoo! Inc., 433 F.3d at 1201.  The French court

8   orders required Yahoo! to take measures to prohibit access from French territory to websites or

9   services that sell Nazi artifacts or evoke Nazism and related topics.  Id. at 1202-03.  In finding

10  personal jurisdiction over the French entities, the Ninth Circuit stated that the French entities'

11  lawsuit in France was expressly aimed at California, because it sought, and the French court

12  granted, orders directing the plaintiff "to perform significant acts in California."  Id. at 1209.  The

13  court reasoned that, although the effect desired by the French court would be felt in France,

14  compliance with the court's orders would necessarily require Yahoo! to make changes to its

15  servers in California.  Id.

16         Brayton Purcell LLP actually involved a venue dispute in a copyright infringement

17  action.  The court nonetheless applied principles of personal jurisdiction because, in copyright

18  infringement actions, the Ninth Circuit has interpreted the venue provision to allow venue "in

19  any judicial district where, if treated as a separate state, the defendant would be subject to

20  personal jurisdiction."  Brayton Purcell LLP, 606 F.3d at 1126 (citing 28 U.S.C. § 1400(a)).  In

21  that case, the plaintiff, a Northern California law firm specializing in elder abuse law, sued

22  defendant, a Southern California law firm, in the U.S. District Court for the Northern District of

23  California alleging that the elder law section of defendant's website consisted entirely of material

24  copied verbatim from the plaintiff's own website.  Id. at 1126-27.  Although the defendant never

25  had any clients or property in the Northern District, the Ninth Circuit nevertheless found that the

26  defendant could be subject to personal jurisdiction in the Northern District.  Id. at 1126.  The

1   court explained that defendant's attorneys were admitted to practice throughout California, the

2   number of law firms specializing in elder abuse law were few, and that the defendant, by the

3   alleged infringement, targeted the plaintiff's business and entered into direct competition with the

4   plaintiff in the Northern District.  Id. at 1130-31.  As such, the court held that the express aiming

5   requirement was satisfied.  Id. at 1131.

6           In this case, by contrast, Thomas's criminal action in Panama did not individually

7   target the plaintiff's business or activities *in California*.  The action was filed in Panama,

8   concerned a Panama property dispute, and challenged plaintiff's Panama activities.  By filing and

9   prosecuting the criminal action, Thomas allegedly targeted plaintiff with respect to his property

10  development and reputation in Panama, not California.[6]  Therefore, Panama was the focal point

11  of the litigation, and any resultant harm suffered in California is incidental.  As the Ninth Circuit

12  observed in Fred Martin Motor Co.:

13          It may be true that Fred Martin's intentional act eventually caused
            harm to Schwarzenegger in California, and Fred Martin may have
14          known that Schwarzenegger lived in California.  But this does not
            confer jurisdiction, for Fred Martin's express aim was local.
15

16  Fred Martin Motor Co., 374 F.3d at 807.  In light of the above, the court concludes that Thomas's

17  criminal action against plaintiff in Panama was not expressly aimed at California.  Accordingly,

18  it does not support a finding of purposeful direction.

19  \\\\\

20  \\\\\

21

22          [6] Plaintiff submitted a copy of an authorization, presumably prepared by the law firm of
    Bufete Berrocal in Panama, for plaintiff to release documents concerning Thomas's investment
23  in the Panama property.  (See Dkt. No. 150-1, Ex. D; Dkt. No. 158-5 at 48.)  The authorization
    was apparently signed by Thomas and sent to plaintiff in California.  To the extent plaintiff
24  claims that service of process and other papers related to the Panama action on plaintiff in
    California confers personal jurisdiction over Thomas, that argument is without merit.  See
25  Yahoo! Inc., 433 F.3d at 1209 ("We do not regard the service of documents in connection with a
    suit brought in a foreign court as contacts that by themselves justify the exercise of personal
26  jurisdiction over a foreign litigant in a United States court.")

1      *(b) Internet postings and communications directed to California by*

2 *defendants Miner, Fine, Berrocal, and Arosemena purportedly acting as Thomas's agents*

3      Plaintiff further contends that several defendants, including defendants Miner,

4 Fine, Berrocal, and Arosemena, sent various extortionate e-mails to plaintiff in California and/or

5 posted numerous defamatory messages on sites maintained in California and accessible by third

6 parties in California.  Plaintiff claims that defendants Miner, Fine, Berrocal, and Arosemena

7 acted as agents for Thomas with respect to these alleged communications, and that these

8 communications therefore establish purposeful direction by Thomas.

9      However, this assertion is entirely speculative and conclusory, and plaintiff fails

10 to provide evidence that even remotely tends to support this contention.  Generally "[a]gents can

11 bind their principals only if they have actual or apparent authority to do so."  Hanson v. America

12 West Airlines, Inc., 544 F. Supp. 2d 1038, 1043 (C.D. Cal. 2008) (citing Hawaiian Paradise Park

13 Corp. v. Friendly Broadcasting Co., 414 F.2d 750, 755 (9th Cir. 1969)).  "Actual authority may

14 be either express or implied...If a principal specifically authorizes an agent to act, the agent has

15 express authority to take that action...If a principal merely states the general nature of what the

16 agent is to do, the agent is said to have implied authority to do acts consistent with the direction."

17 Id. (internal citations omitted).  "Apparent authority results when the principal does something or

18 permits the agent to do something which reasonably leads another to believe that the agent had

19 the authority he purported to have."  Id.

20      Defendants Berrocal and Arosemena may have had the actual and apparent

21 authority under a Panama power of attorney (see dkt. no. 158-3 at 33-34) to represent Thomas

22 with respect to the Panama criminal action; defendant Miner may have initially introduced

23 Thomas and other defendants to these attorneys; and defendants Miner, Fine, and Berrocal may

24 have sent updates to the other defendants regarding the Panama criminal action.  Indeed, these

25 defendants may well have communicated and shared ideas for purposes of the litigation in

26 Panama.  However, plaintiff has offered no evidence that defendant Thomas actually authorized

any of these purported agents to act on her behalf *in any conduct expressly aimed at California*. Nor has plaintiff provided evidence that Thomas made representations of such authority to plaintiff or a third party, resulting in apparent authority.  To the contrary, Thomas in her affidavit expressly denies engaging in or authorizing communications or website postings directed at California regarding plaintiff or his activities in Panama.  (See Dkt. No. 148 at 12, ¶ 9.)

Apart from bare allegations in the face of defendant's specific denials, plaintiff has not come forth with even a minimal showing of evidence to support his agency theory. Plaintiff has submitted copious documents and e-mails authored by defendants Miner, Fine, and others potentially directed at California, but none of the e-mails were authored by defendant Thomas.  Furthermore, any suggestions by Miner and/or Fine that they were representing the other defendants in communications directed at California are irrelevant, because agency is established by the manifestations of the principal – not the manifestations of the purported agent(s).[7]

Each defendant's contacts with the forum state must be assessed on an individual basis.  See Rush v. Savchuk, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe*...must be met as to each defendant").  Accordingly, the alleged actions of defendants Miner, Fine, Berrocal, and Arosemena do not support a finding of purposeful direction on the part of defendant Thomas.

Other Prongs of the Specific Personal Jurisdiction Test

"The plaintiff bears the burden of satisfying the first two prongs of the test...If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." Fred Martin Motor Co., 374 F.3d at 802.  Because plaintiff has failed to present any

---

[7] Additionally, even if defendant Thomas were copied on some e-mails by other defendants sent to plaintiff in California and failed to object to stray comments made about plaintiff in such e-mails, the court finds that this, in the absence of affirmative conduct or encouragement by Thomas, is woefully insufficient to establish agency or any type of purposeful direction.

1   actual evidence of purposeful direction by Thomas, the court does not reach the remaining two

2   factors of the specific personal jurisdiction test.  The court finds that it does not have personal

3   jurisdiction over defendant Thomas.

4                          Plaintiff's Request for Jurisdictional Discovery

5                  As noted above, plaintiff also filed a motion for leave to conduct jurisdictional

6   discovery regarding defendant Thomas, which is currently under submission.  (Dkt. No. 143.)

7   The court must therefore decide whether plaintiff is entitled to a further opportunity to generate

8   potential evidence that this court has personal jurisdiction over defendant Thomas.

9                  "In considering a motion to dismiss for lack of personal jurisdiction, a court may

10  either postpone the decision and permit discovery, determine the motion on the basis of the

11  pleadings and affidavits, or hold an evidentiary hearing."  Martinez v. Manheim Central

12  California, 2011 WL 1466684, at *3 (E.D. Cal. Apr. 18, 2011) (citing Data Disc, Inc. v. Systems

13  Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)).  "Discovery should ordinarily

14  be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or

15  where a more satisfactory showing of the facts is necessary.'" Butcher's Union Local No. 498,

16  United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986)

17  (quoting Data Disc, Inc., 557 F.2d at 1285 n.1)).  However, "[w]here a plaintiff's claim of

18  personal jurisdiction appears to be both attenuated and based on bare allegations in the face of

19  specific denials made by defendants, the Court need not permit even limited discovery."

20  Terracom v. Valley Nat'l Bank, 49 F.3d 555, 562 (9th Cir. 1995) (quoting Rich v. KIS Cal., Inc.,

21  121 F.R.D. 254, 259 (M.D.N.C. 1988).  "In other words, limited discovery should not be

22  permitted to conduct a 'fishing expedition.'"  Martinez, 2011 WL 1466684, at *3 (citing Rich,

23  121 F.R.D. at 259).

24                 "Although there is no definitive Ninth Circuit authority specifically addressing the

25  level of showing that a plaintiff must make to be entitled to jurisdictional discovery, district

26  courts in this circuit have required a plaintiff to establish a 'colorable basis' for personal

1    jurisdiction before discovery is ordered." Martinez, 2011 WL 1466684, at *4 (citing Mitan v.

2    Feeney, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007)); eMag Solutions, LLC v. Toda Kogyo

3    Corp., 2006 WL 3783548, at *2 (N.D. Cal. Dec. 21, 2006); and Chapman v. Krutonog, 256

4    F.R.D. 645, 649 (D. Haw. 2009).  "This 'colorable' showing should be understood as something

5    less than a prima facie showing, and could be equated as requiring the plaintiff to come forward

6    with 'some evidence' tending to establish personal jurisdiction over the defendant." Mitan, 497

7    F. Supp. 2d at 1119 (internal citations omitted).

8         Here, for the reasons discussed above, plaintiff has not made even a colorable

9    showing that this court has personal jurisdiction over defendant Thomas.  Indeed, plaintiff's

10   motion appears to be a thinly-veiled request to conduct full-blown discovery on the merits.

11   Plaintiff seeks leave to depose Thomas and obtain documents regarding the criminal charges she

12   filed against plaintiff in Panama, the evidence in support of those charges, and the

13   communications between Thomas and Miner, Berrocal, Arosemena, and the "prosecutor" in

14   Panama.  (Dkt. No. 150 at 14, ¶¶ 43-49.)  Furthermore, plaintiff requests leave to conduct

15   discovery regarding Thomas's "communications with fellow co-conspirators/defendants

16   referencing at California and Johnson" as well as Thomas's "communications with active

17   websites and Internet groups that included California residents."  (Dkt. No. 150 at 14-15, ¶ 49.)

18   This amounts to no more than a request "to fish on a hunch that something might be caught in a

19   widely-cast net." Martinez, 2011 WL 1466684, at *5; see also Boschetto v. Hansing, 539 F.3d

20   1011, 1020 (9th Cir. 2008) (holding that denial of discovery is not an abuse of discretion when it

21   is "based on little more than a hunch that it might yield jurisdictionally relevant facts").

22   Therefore, the court concludes that further jurisdictional discovery is unwarranted.

23         <u>Dismissal or Transfer of Claims against Defendant Thomas</u>

24         Finally, in light of the court's conclusion that it lacks personal jurisdiction over

25   defendant Thomas, the only issue remaining is whether plaintiff's claims against defendant

26   Thomas should be dismissed or transferred to the District of Colorado where Thomas resides.  28

1  U.S.C. § 1631 provides that:

2            Whenever a civil action is filed in a court...and that court finds that
3            there is a want of jurisdiction, the court shall, if it is in the interest
          of justice, transfer such action...to any other such court in which
4            the action...could have been brought at the time it was filed...and
          the action...shall proceed as if it had been filed in...the court to
          which it is transferred on the date upon which it was actually filed
5            in...the court from which it is transferred.

6  In this case, the court cannot transfer the entire action to the District of Colorado, because it is

7  obvious that the Colorado district court would lack personal jurisdiction over several of the other

8  defendants.

9         The Circuits are split regarding whether the language of 28 U.S.C. § 1631 permits

10  federal courts to partially transfer an action.  See United States v. County of Cook, Ill., 170 F.3d

11  1084 (Fed. Cir. 1999) (approving transfer of some, but not all, claims); FDIC v. McGlamery, 74

12  F.3d 218, 222 (10th Cir. 1996) (finding transfer of some claims appropriate only after a Rule 21

13  severance); Hill v. United States Air Force, 795 F.2d 1067, 1070 (D.C. Cir. 1986) (finding the

14  statute authorizes the transfer of an action, not a claim).  Even within the same circuit, cases have

15  not always been consistent.  The Tenth Circuit recently stated that, although transfer was a

16  discretionary option under 28 U.S.C. § 1631 to cure deficiencies related to personal jurisdiction,

17  it was "aware of no authority even permitting, much less requiring, a district court to unilaterally

18  split up an action and transfer the resultant components to diverse jurisdictions under the

19  auspices of § 1631." Schrader v. Biddinger, 633 F.3d 1235, 1249-50 (10th Cir. 2011).  However,

20  Schrader curiously cited to an earlier Tenth Circuit decision, Trujillo v. Williams, 465 F.3d 1210

21  (10th Cir. 2006), which actually held that the district court had discretion to sever and transfer a

22  plaintiff's claims against Virginia-based defendants from his claims against New Mexico-based

23  defendants, or to dismiss the claims against the Virginia-based defendants, to cure jurisdictional

24  defects. Id. at 1216.  Indeed, in Trujillo, because the district court had not indicated its reasons

25  for dismissing as opposed to transferring the claims, the Tenth Circuit remanded the case for a

26  specific determination of whether the plaintiff's claims against the Virginia defendants should be

25

transferred rather than dismissed under the federal transfer statutes.  Id. at 1222-23.

　　　　While the Ninth Circuit has not squarely addressed the issue, it implicitly recognized that a portion of a case could be transferred.  See e.g. Baeta v. Sonchik, 273 F.3d 1261, 1264 (9th Cir. 2001) ("Under the circumstances presented, transfer of the portion of the habeas petition raising nationality allegations to this Court is appropriate."); see also Nelson v. International Paint Co., 716 F.2d 640, 642 (9th Cir. 1983).  Additionally, the court agrees with the rationale of the Federal Circuit in allowing transfer of individual claims:

> The United States suggests no logical reason why this remedy should not be allowed on a claim-by-claim basis.  It would indeed be a curious result that a district court could transfer an action under § 1631 containing a single claim over which it lacked jurisdiction but could not transfer that claim if the claimant made an additional claim in his action over which the court did have jurisdiction.  We see no reason to deny the remedial benefit of § 1631 in this circumstance merely because some of the claims were properly lodged in the transferor court.

County of Cook, Ill., 170 F.3d at 1089.  Furthermore, in the event a Rule 21 severance[8] is technically required before transfer of individual claims so as to result in the transfer of an "action," see 28 U.S.C. § 1631 and McGlamery, 74 F.3d at 222, the court has no difficulty doing so here.  Defendant Martha Thomas is not an indispensable party to this action, and plaintiff's claims against her can be severed if necessary to prevent prejudice.  See Pamplona v. Hernandez, 2009 WL 578578, at * 3 (S.D. Cal. March 5, 2009).

　　　　Thus, the only question is whether transfer would be in the interest of justice. "When determining whether transfer is in the interest of justice, courts have considered whether the failure to transfer would prejudice the litigant, whether the litigant filed the original action in good faith, and other equitable factors."  Cruz-Aguilera v. INS, 245 F.3d 1070, 1074 (9th Cir. 2001).  "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating."  Baeta v.

---

[8] Fed. R. Civ. P. 21 provides, in part, that "[t]he court may also sever any claim against a party."

1  Sonchik, 273 F.3d 1261, 1264-65 (9th Cir. 2001).  This principle applies with even greater force

2  when a claim would be time-barred without a transfer.  Id.

3          In this case, it is clear that plaintiff did not have a sufficient basis for bringing his

4  claims against defendant Thomas in this district.  Nevertheless, given plaintiff's pro se status, the

5  court cannot confidently conclude that plaintiff acted in bad faith.  Moreover, a failure to transfer

6  would prejudice plaintiff, because the statute of limitations would likely bar refiling the claims

7  against defendant Thomas in Colorado.

8          For these reasons, the court will recommend that defendant Thomas's motion to

9  dismiss for lack of personal jurisdiction be granted in part and that plaintiff's claims against

10  Thomas be severed under Fed. R. Civ. P. 21 and transferred to the United States District Court

11  for the District of Colorado.

12  ORDER TO SHOW CAUSE REGARDING SERVICE OF PROCESS

13          On November 3, 2011, when the court granted plaintiff leave to file his third

14  amended complaint, the court also ordered plaintiff to complete service of process on all

15  defendants within 28 days.  (Dkt. No. 118.)  The court's specific order superseded the default

16  time limits for service of process outlined in Fed. R. Civ. P. 4.  Consequently, when the January

17  12, 2012 joint status report indicated that service of process was not completed, the court issued

18  its January 27, 2012 order to show cause why defendants Rogelio Arosemena, Manuel Berrocal,

19  Peter Reinhold, Maurine Smith, Susan Fine, Kim Parsons, and Solarte Inn Corporation should

20  not be dismissed from the action pursuant to Fed. R. Civ. P. 41(b) for plaintiff's failure to

21  prosecute and follow court orders regarding service of process.  (Dkt. No. 154.)

22          The court has reviewed plaintiff's response and concludes that plaintiff has been

23  making substantial efforts to serve the above-mentioned individuals.  Accordingly, the order to

24  show cause will be discharged and plaintiff will be permitted an additional 60 days to complete

25  \\\\\

26  \\\\\

1   service of process.[9]  However, plaintiff is hereby put on notice that the court will recommend

2   dismissal of any defendants not yet served with process upon expiration of the 60-day period.

3   Contrary to plaintiff's contention, this is not a "young" case – it was originally filed in July 23,

4   2010 and the only reason no scheduling order is in place is because the court has thus far liberally

5   allowed plaintiff to amend his complaint.  It may be that some defendants prove difficult or

6   virtually impossible to locate and serve, but this case must now move forward.

7   MISCELLANEOUS

8            In its February 4, 2011 order granting plaintiff leave to file electronically, the

9   court stated that it would "carefully monitor plaintiff's filings to assess their reasonableness.

10   Should the court discern any unreasonably expansive filings, either in number or volume, this

11   order will be vacated."  (Dkt. No. 52.)  The court finds that plaintiff's number and volume of

12   filings have been excessive.  For example, with respect to defendant Thomas's motion to dismiss

13   and plaintiff's associated request for leave to conduct jurisdictional discovery alone, plaintiff has

14   submitted an approximate total of 667 pages for the court's review.  This has imposed a

15   significant burden on the court's resources.  Accordingly, the court determines that it is

16   appropriate to limit plaintiff's future filings.

17            In particular, plaintiff shall have no more than one motion pending on the court's

18   docket at any given time (exclusive of motions brought by other parties), unless otherwise

19   ordered by the court.  Any memorandum of points and authorities in support of or in opposition

20   to a motion shall be no longer than 25 pages with a font size of 12 Times New Roman (or

21   equivalent font) and shall not include single spacing except for block quotes.  Any filings

22   exceeding these limitations will be stricken.  While the court is not imposing a limitation on the

23   number of exhibit pages, plaintiff is cautioned to append only the exhibits which are really

24   _____

25   [9] Of course, this does not affect the court's recommendation that defendants Smith and
Fine should be dismissed along with defendant Cohen pursuant to Fed. R. Civ. P. 21 to cure
26   jurisdictional defects.

necessary to support a position.  Plaintiff is also cautioned that further excessive filing (in number or volume) will result in revocation of plaintiff's electronic filing privileges.

CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1.  Plaintiff's motion to continue a decision on defendant Thomas's motion to dismiss (dkt. no. 168) is denied.

2.  Plaintiff's motion for leave to conduct jurisdictional discovery regarding defendant Thomas (dkt. no. 143) is denied.

3.  The order to show cause regarding service of process (dkt. no. 154) is discharged.  Plaintiff is granted a final 60-day period within which to complete service of process on all defendants.  Failure to complete service of process within this period will result in a recommendation that the unserved defendants be dismissed from the case.

4.  Plaintiff's future filings are limited as follows: plaintiff shall have no more than one motion pending on the court's docket at any given time (exclusive of motions brought by other parties), unless otherwise ordered by the court.  Any memorandum of points and authorities in support of or in opposition to a motion shall be no longer than 25 pages with a font size of 12 Times New Roman (or equivalent font) and shall not include single spacing except for block quotes.  Any filings exceeding these limitations will be stricken.  Further excessive filing (in number or volume) will result in revocation of plaintiff's electronic filing privileges.

IT IS ALSO HEREBY RECOMMENDED THAT:

1.  Plaintiff's claims against defendants Judith Cohen, Maureen Smith, and Susan Fine be dismissed without prejudice pursuant to Fed. R. Civ. P. 21.

2.  Defendant Martha Thomas's motion to dismiss for lack of personal jurisdiction (dkt. no. 131) be granted in part, plaintiff's claims against Thomas be severed pursuant to Fed. R. Civ. P. 21, and these claims be transferred to the United States District Court for the District of Colorado.

1    These findings and recommendations are submitted to the United States District

2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

3   (14) days after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6   shall be served and filed within seven (7) days after service of the objections.  The parties are

7   advised that failure to file objections within the specified time may waive the right to appeal the

8   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9   DATED: March 2, 2012

10                                     /s/ Gregory G. Hollows
                                     UNITED STATES MAGISTRATE JUDGE

11   GGH/wvr
     Johnson.1968.smj-pj.fr.wpd