1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE EASTERN DISTRICT OF CALIFORNIA

8    SHEPARD JOHNSON,

9              Plaintiff,              No. CIV S-10-1968 GEB GGH PS

10        vs.

11   CHESTER MITCHELL, et al.,         ORDER AND
                                       FINDINGS AND RECOMMENDATIONS
12
               Defendants.
13

14   _____/

15          Plaintiff initiated this diversity action for malicious prosecution and civil

16   conspiracy to commit malicious prosecution against various defendants on July 23, 2010 and is

17   currently proceeding with the third amended complaint filed on November 6, 2011.  (See Dkt.

18   No. 119.)

19          Presently pending before the court are defendant Ford Hermansen's motion to

20   dismiss for lack of personal jurisdiction (dkt. no. 151) and defendants Michael Mode and Lynn

21   Yarrington's motion to dismiss for lack of personal jurisdiction (dkt. no. 179).  Plaintiff filed

22   opposition briefs to both motions (dkt. nos. 185, 186), and defendants Mode and Yarrington filed

23   a reply brief (dkt. no. 188).  Subsequently, the motions were submitted on the record without oral

24   argument.  After considering the papers in support of and in opposition to the motions, the

25   court's record in this matter, and the applicable law, the court FINDS AS FOLLOWS:

26   \\\

                                            1

BACKGROUND

The facts and procedural history of this case were previously described in detail in the court's March 2, 2012 order and findings and recommendations related to other motions filed in this matter.  (See Dkt. No. 169.)  As such, the court only sets forth some limited background facts here.

Plaintiff is a real estate developer who claims that the defendants purchased lots for a planned unit development on an island in Panama.  (See Third Amended Complaint, Dkt. No. 119 ["TAC"] at 2-3.)  Plaintiff alleges that defendants did not want to be subject to the Conditions, Covenants, and Restrictions ("CC&Rs") for the development, and so rather than settling the matter by way of a contract dispute resolution, defendants "banded together and launched a barrage of deliberate falsehoods, and engaged in wrongful conduct...aimed at upsetting and intimidating him, destroying his reputation and business, disrupting relations with other lot owners, and discouraging prospective purchasers. (TAC at 3-4.)  Defendants also allegedly initiated criminal proceedings against him in the Panama courts which were purportedly later dismissed, and which are the subject of plaintiff's malicious prosecution and conspiracy claims in this litigation.  (TAC at 4-6.)  Plaintiff alleges that he was forced to file for bankruptcy on July 3, 2007 "due in significant part to the false criminal complaints filed by Defendants."  (TAC at 5.)

The instant motions to dismiss for lack of personal jurisdiction followed, each of which will be addressed separately below.

DISCUSSION

Defendants' Mode and Yarrington's Motion to Dismiss for Lack of Personal Jurisdiction

Defendants Mode and Yarrington move to dismiss plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(2), contending that they do not have the requisite minimum contacts with the forum state of California to allow the court to exercise personal jurisdiction

1  over them.

2  *Whether Personal Jurisdiction Exists Over Defendants Mode and*

3  *Yarrington*

4  The plaintiff generally bears the burden of establishing the district court's

5  personal jurisdiction over the defendant.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell &

6  Clements Ltd., 328 F.3d 1122, 1128-29 (9th Cir. 2003).  "A non-resident defendant may be

7  subject to the personal jurisdiction of the court where the defendant has either a continuous and

8  systematic presence in the state (general jurisdiction), or minimum contacts with the forum state

9  such that the exercise of jurisdiction 'does not offend traditional notions of fair play and

10 substantial justice' (specific jurisdiction)."  Martinez v. Manheim Central California, 2011 WL

11 1466684, at *1 (E.D. Cal. Apr. 18, 2011) (citing Int'l Shoe Co. v. Washington, 325 U.S. 310, 316

12 (1945)).  "Where there is no federal statute applicable to determine personal jurisdiction, a

13 district court should apply the law of the state where the court is located."  Id. (citing

14 Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)).  "California law

15 requires only that the exercise of personal jurisdiction comply with federal due process

16 requirements."  Id. (citing Cal. Civ. Proc. Code § 410.10 and Fred Martin Motor Co., 374 F.3d at

17 800-01).

18 Defendants Mode and Yarrington submitted declarations indicating that they are

19 residents of Vermont, have never resided in California, and do not regularly conduct business or

20 travel to California.  They have also never owned property in California; paid taxes on their own

21 behalf in California; maintained a bank account in California; registered to vote in California;

22 been employed in California; held a telephone listing, address listing, or postal listing in

23 California; or made a court appearance in California.  (See Dkt. Nos. 179-2, 179-3.)

24 Defendant Mode stated that, as a wood artist with his only studio in Vermont, he

25 attended craft shows in California on two occasions approximately ten years ago, and that his

26 work was carried and sold intermittently by two galleries in California between 1993 and 2011.

3

His only personal contact with plaintiff was when he signed the purchase contract in Panama.  In 2004, at plaintiff's direction, he also sent two checks to plaintiff's business in California to cover homeowners association dues and other fees.  He recalls posting two or three messages on a website maintained by plaintiff for the property owners to communicate with each other, but cannot recall the content of the messages.  (Dkt. No. 179-3.)  Although the operative complaint recites various allegedly defamatory or malicious messages posted by some of the other defendants, plaintiff does not cite to any such messages posted by defendant Mode.

Defendant Yarrington stated that, as a weaver and fabric designer with her only studio in Vermont, she participated in one craft show each year in California between 1985 and 2009 to sell artwork.  Her artwork is currently sold in one gallery in California, and has been sold intermittently at five other California galleries over the last twenty years.  She also remits taxes to the State of California on behalf of customers who purchase artwork from her at the craft shows she occasionally attends in California.   Her only personal contact with plaintiff was when she signed the purchase contract in Panama.  Defendant Yarrington never posted any messages to the above-mentioned website maintained by plaintiff.  (Dkt. No. 179-2.)

Furthermore, defendants Mode and Yarrington argue that they had taken no action in California with respect to plaintiff's allegations – the underlying property dispute occurred in Panama over property located in Panama, the negotiation and agreement for purchase and sale of the property occurred in Panama, and the criminal actions described in plaintiff's complaint were filed against plaintiff in Panama.

In his opposition, plaintiff does not dispute these defendants' contention that they lack the requisite minimum contacts with California.  Instead, however, plaintiff argues that these defendants consented to this court exercising personal jurisdiction over them by virtue of the following clause in the Purchase Contract defendants entered into with one of plaintiff's corporations, Grupo Islas Tropicales:

\\\

4

> The violation of these dispositions will be sanctioned with the annulment of this contract, the down payment, as well as the monthly installments already paid by THE BUYER will remain in favor of THE SELLER as indemnification. *Disputes will be resolved by mediation in Sacramento, California.*

(Dkt. No. 186-1 at 6 (emphasis added).)  Plaintiff contends that this is a forum selection clause and that defendants Mode and Yarrington, by agreeing to this clause, consented to this court's jurisdiction.

As an initial matter, plaintiff correctly points out that the absence of minimum contacts does not bar personal jurisdiction in cases where the defendant consented to the court's jurisdiction.  See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 243 F. Supp. 2d 1073, 1082 (C.D. Cal. 2003) ("In the absence of a traditional basis for asserting jurisdiction (i.e., physical presence, domicile or consent), due process requires that a non-resident have certain minimum contacts with the forum...."); see also Rahco Int'l, Inc. v. Laird Elec., Inc., 502 F. Supp. 2d 1118, 1122 (E.D. Wash. 2006) (citing Burger King Corp v. Rudzewicz, 471 U.S. 462, 473 n.14 (1985)) ("[P]arties may consent to the jurisdiction of a particular court through the use of a forum-selection clause in a contract, regardless of minimum contacts.")

First and dispositively, the court observes that the mediation clause occurs in a contract between plaintiff's corporation, Grupo Islas Tropicales, and defendants Mode and Yarrington.  The instant action is not a contractual dispute between Grupo Islas Tropicales and defendants; nor is Grupo Islas Tropicales (or plaintiff on behalf of Grupo Islas Tropicales) attempting to somehow compel mediation on a contractual dispute.  Although the contract serves as a backdrop to plaintiff's individual tort action, this is not a breach of contract action.  See Third Amended Complaint, listing nothing but malicious prosecution claims and a civil conspiracy tort claim.  As such, the mediation clause does not even apply to plaintiff's personal tort claims raised in this action.

Secondarily, even if the court were to view the mediation clause as pertaining at all to the instant tort action,  the pertinent question is whether the above-mentioned mediation

1  clause operates as a forum selection clause.  Certainly, the clause defendants agreed to is not a

2  traditional forum selection clause, given that it does not indicate agreement to *litigate* claims in a

3  particular court or state.

4              Nevertheless, some courts have held that an agreement to arbitrate a dispute in the

5  forum state can constitute consent to personal jurisdiction in the forum state.  See e.g. Doctor's

6  Assocs., Inc. v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a

7  particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts

8  within that jurisdiction.").  Other courts have held more narrowly that "[w]hen a party agrees to

9  arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed

10  upon state may exercise personal jurisdiction over the parties for the limited purpose of

11  compelling arbitration."  Armstrong v. Assocs. Int'l Holdings Corp., 242 Fed. App'x 955, 957

12  (5th Cir. 2007).  The reasoning is that courts of the chosen forum for arbitration must necessarily

13  have personal jurisdiction to compel arbitration; otherwise the agreement to arbitrate would be

14  effectively unenforceable.  St. Paul Fire & Marine Ins. Co. v. Courtney Enterprises, Inc., 270

15  F.3d 621, 624 (8th Cir. 2001).  The Ninth Circuit has not definitively ruled on whether an

16  agreement to arbitrate disputes in the forum state is by itself a consent to personal jurisdiction in

17  the forum state.  See Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives, 103 F.3d 888, 893-

18  94 (9th Cir. 1996).[1]

19              Although there is a dearth of authority with respect to the effect of mediation

20  clauses and the question is a close one, the court finds that the mediation clause at issue here is

21

22       [1] In Fireman's Fund Ins. Co., the Ninth Circuit found that, even if an arbitration clause in
the agreement at issue did not amount to the defendant's consent to personal jurisdiction in

23  California, that defendant's contacts with California essentially satisfied the requirements of due
process.  In addition to agreeing to arbitrate disputes in California, the defendant actually entered

24  California to arbitrate a dispute and to participate in adversarial bankruptcy proceedings.  Thus,
the Ninth Circuit reasoned that the defendant had purposefully availed itself of the privilege of

25  conducting activities in California, the lawsuit arose out of those activities, and the court's
exercise of jurisdiction over the defendant was reasonable.  See Fireman's Fund Ins. Co., 103

26  F.3d at 893-95.

not a forum selection clause.  Even assuming, without deciding, that an agreement to *arbitrate* a dispute in the forum state constitutes consent to personal jurisdiction in the courts of that state, the same cannot be said for a *mediation* clause.  Mediation is generally a non-binding, relatively informal process that can take as little as one day or even a couple of hours.  Sometimes parties even appear at mediations over the telephone.  Unlike arbitration, which is typically a binding and more formal process that in various respects resembles litigation, mediation imposes a much lesser burden and risk on the parties involved.  Thus, an agreement to mediate in California cannot reasonably be read as consent to full-scale litigation in a California district court.  <u>See</u> <u>Chambers Medical Found. v. Chambers</u>, 2007 WL 2350261, at *2 (W.D. La. Aug. 3, 2007) (finding that a mediation clause selects a forum for mediation rather than litigation).

Accordingly, because defendants Mode and Yarrington did not consent to this court's jurisdiction and do not have the requisite minimum contacts with California, the court finds that it lacks personal jurisdiction over these defendants.  Thus, the only issue remaining is whether plaintiff's claims against defendants Mode and Yarrington should be dismissed or transferred to the District of Vermont where they reside.

### *Whether Plaintiff's Claims Against Defendants Mode and Yarrington*
### *Should be Transferred or Dismissed*

28 U.S.C. § 1631 provides that:

> Whenever a civil action is filed in a court...and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action...to any other such court in which the action...could have been brought at the time it was filed...and the action...shall proceed as if it had been filed in...the court to which it is transferred on the date upon which it was actually filed in...the court from which it is transferred.

In this case, the court cannot transfer the entire action to the District of Vermont, because it is obvious that the Vermont district court would lack personal jurisdiction over several of the other defendants.

\\\

1    The Circuits are split regarding whether the language of 28 U.S.C. § 1631 permits

2 federal courts to partially transfer an action.  See United States v. County of Cook, Ill., 170 F.3d

3 1084 (Fed. Cir. 1999) (approving transfer of some, but not all, claims); FDIC v. McGlamery, 74

4 F.3d 218, 222 (10th Cir. 1996) (finding transfer of some claims appropriate only after a Rule 21

5 severance); Hill v. United States Air Force, 795 F.2d 1067, 1070 (D.C. Cir. 1986) (finding that

6 the statute authorizes the transfer of an action, not a claim).  Even within the same circuit, cases

7 have not always been consistent.  The Tenth Circuit recently stated that, although transfer was a

8 discretionary option under 28 U.S.C. § 1631 to cure deficiencies related to personal jurisdiction,

9 it was "aware of no authority even permitting, much less requiring, a district court to unilaterally

10 split up an action and transfer the resultant components to diverse jurisdictions under the

11 auspices of § 1631."  Schrader v. Biddinger, 633 F.3d 1235, 1249-50 (10th Cir. 2011).  However,

12 Schrader curiously cited to an earlier Tenth Circuit decision, Trujillo v. Williams, 465 F.3d 1210

13 (10th Cir. 2006), which actually held that the district court had discretion to sever and transfer a

14 plaintiff's claims against Virginia-based defendants from his claims against New Mexico-based

15 defendants, or to dismiss the claims against the Virginia-based defendants, to cure jurisdictional

16 defects.  Id. at 1216.  Indeed, in Trujillo, because the district court had not indicated its reasons

17 for dismissing as opposed to transferring the claims, the Tenth Circuit remanded the case for a

18 specific determination of whether the plaintiff's claims against the Virginia defendants should be

19 transferred rather than dismissed under the federal transfer statutes.  Id. at 1222-23.

20    While the Ninth Circuit has not squarely addressed the issue, it implicitly

21 recognized that a portion of a case could be transferred.  See e.g. Baeta v. Sonchik, 273 F.3d

22 1261, 1264 (9th Cir. 2001) ("Under the circumstances presented, transfer of the portion of the

23 habeas petition raising nationality allegations to this Court is appropriate."); see also Nelson v.

24 International Paint Co., 716 F.2d 640, 642 (9th Cir. 1983).  Additionally, the court agrees with

25 the rationale of the Federal Circuit in allowing transfer of individual claims:

26 \\\

> The United States suggests no logical reason why this remedy should not be allowed on a claim-by-claim basis. It would indeed be a curious result that a district court could transfer an action under § 1631 containing a single claim over which it lacked jurisdiction but could not transfer that claim if the claimant made an additional claim in his action over which the court did have jurisdiction. We see no reason to deny the remedial benefit of § 1631 in this circumstance merely because some of the claims were properly lodged in the transferor court.

County of Cook, Ill., 170 F.3d at 1089. Furthermore, in the event a Rule 21 severance[2] is technically required before transfer of individual claims so as to result in the transfer of an "action," see 28 U.S.C. § 1631 and McGlamery, 74 F.3d at 222, the court has no difficulty doing so here. Defendants Mode and Yarrington are not indispensable parties to this action, and plaintiff's claims against them can be severed if necessary to prevent prejudice. See Pamplona v. Hernandez, 2009 WL 578578, at * 3 (S.D. Cal. March 5, 2009).

Thus, the only question is whether transfer would be in the interest of justice. "When determining whether transfer is in the interest of justice, courts have considered whether the failure to transfer would prejudice the litigant, whether the litigant filed the original action in good faith, and other equitable factors." Cruz-Aguilera v. INS, 245 F.3d 1070, 1074 (9th Cir. 2001). "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." Baeta v. Sonchik, 273 F.3d 1261, 1264-65 (9th Cir. 2001). This principle applies with even greater force when a claim would be time-barred without a transfer. Id.

Defendants first argue that severance and transfer are not in the interest of justice, because plaintiff is unlikely to succeed on the merits. Defendants point out that a malicious prosecution claim is generally disfavored under California law, see Estate of Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008), and that plaintiff is therefore unlikely to succeed on his claims for conspiracy to commit malicious prosecution against defendants.

---

[2] Fed. R. Civ. P. 21 provides, in part, that "[t]he court may also sever any claim against a party."

1    However, the court is unable to make a determination regarding the merits of plaintiff's claims

2    based on the present record, and therefore declines to reach the issue.

3              Defendants next argue that severance and transfer are inappropriate here, because

4    plaintiff's conspiracy to commit malicious prosecution claims, including the claims against

5    defendants Mode and Yarrington, were brought against all the defendants together for their

6    actions taken in concert.  They contend that severing the conspiracy claims against these two

7    defendants would result in the same conspiracy issues being litigated in multiple forums, which

8    would not be in the interest of justice.  See Kennedy v. Phillips, 2012 WL 261612, at *4 (W.D.

9    Wash Jan. 30, 2012) ("Severance is inappropriate when it results in the same issues being

10   litigated in two places.")  While this court agrees that duplicative litigation as a general matter is

11   not in the interest of justice, the court disagrees with Kennedy to the extent it suggests that the

12   potential for duplicative litigation is the sole dispositive factor to consider in the transfer inquiry.

13   To the contrary, the Ninth Circuit instructed district courts to consider a range of equitable

14   factors in exercising its discretion.  Cruz-Aguilera, 245 F.3d at 1074.

15             Here, other equitable factors militate in favor of transfer.  Although the court

16   ultimately finds that it does not have personal jurisdiction over defendants Mode and Yarrington,

17   the court cannot confidently conclude that plaintiff acted in bad faith when bringing his claims

18   against these defendants in this district, especially in light of plaintiff's pro se status.  More

19   importantly, failure to transfer the claims in this case would prejudice plaintiff, because plaintiff

20   would have to re-file his claims in the Vermont district court and pay another filing fee.  Plaintiff

21   would also risk having his claims barred by the applicable statute of limitations.  Although

22   defendants state in conclusory fashion that the statute of limitations should not bar plaintiff from

23   re-filing his claims in Vermont, they provide no briefing or argument in support of that assertion.

24   The court cannot determine, based on the record before it, exactly when plaintiff's causes of

25   action against defendants Mode and Yarrington may have arisen.  In any event, if plaintiff can so

26   easily re-file his claims in Vermont, as defendants suggest, it would seem to be more sensible

and equitable to just transfer the claims.  Defendants' argument that there is a "public policy difference between the court facilitating duplicative litigation and [plaintiff] pursuing it on his own" elevates form over substance.  In any event, the court finds that the equitable factors taken together weigh in favor of transfer pursuant to 28 U.S.C. § 1631.

The court recognizes that transfer of the claims may result in some duplicative litigation.  However, in cases such as this one, where defendants are located in multiple different states and abroad, some amount of duplicative litigation may well be unavoidable if plaintiff is to be allowed an opportunity to pursue his claims against all alleged wrongdoers.

For these reasons, the court will recommend that defendants Mode and Yarrington's motion to dismiss for lack of personal jurisdiction be granted in part and that plaintiff's claims against defendants Mode and Yarrington be severed under Fed. R. Civ. P. 21 and transferred to the United States District Court for the District of Vermont.

<u>Defendant Hermansen's Motion to Dismiss for Lack of Personal Jurisdiction</u>

Defendant Hermansen also moves to dismiss plaintiff's claims against him pursuant to Fed. R. Civ. P. 12(b)(2) on the grounds that he does not have the requisite minimum contacts with the forum state of California to allow the court to exercise personal jurisdiction over him.

Defendant Hermansen asserts that he is a resident of Panama, and that he does not own property; conduct business; maintain any offices, agents, bank accounts, licenses, or addresses in California; generate revenues from California; or pay taxes in California.  He further argues that the underlying property dispute occurred in Panama over property located in Panama, the negotiation and agreement for purchase and sale of the property occurred in Panama, and the criminal actions described in plaintiff's complaint were filed against plaintiff in Panama.

Plaintiff does not dispute that defendant Hermansen lacks the requisite minimum contacts with California.  However, plaintiff argues that defendant Hermansen waived his right to assert a defense of lack of personal jurisdiction.  This argument has merit.  The Ninth Circuit

1    explained that:

2              Any time defendant makes a pre-answer Rule 12 motion, he must
               include, on penalty of waiver, the defenses set forth in subdivision
3              (2) through (5) of Rule 12(b).  If one or more of these defenses are
               omitted from the initial motion but were "then available" to the
4              movant, they are permanently lost.  Not only is defendant
               prevented from making it the subject of a second preliminary
5              motion but he may not even assert the defense in his answer.

6    Chilicky v. Schweiker, 796 F.2d 1131, 1136 (9th Cir. 1986), rev'd on other grounds, 487 U.S.

7    412 (1988).

8              The docket in this case reveals that defendant Hermansen first filed a purported

9    motion to dismiss and/or answer on August 24, 2011.  (See Dkt. No. 82.)  The purported motion

10   to dismiss and/or answer was essentially a letter to the district judge disputing plaintiff's

11   substantive allegations and outlining defendant Hermansen's version of the facts related to this

12   case.  Based on the facts and arguments set forth in the letter, defendant Hermansen requested

13   that he be dismissed from the case.  Defendant Hermansen's purported motion to dismiss and/or

14   answer did not raise the defense of lack of personal jurisdiction.  Subsequently, on September 27,

15   2011, the court denied defendant Hermansen's purported motion to dismiss and/or answer

16   without prejudice, and provided him with basic instruction on how to either (1) file an answer in

17   compliance with Fed. R. Civ. P. 8 or (2) properly file and notice a motion to dismiss pursuant to

18   Fed. R. Civ. P. 12 and E.D. Cal. L.R. 230.  (Dkt. No. 103.)  Finally, on October 24, 2011,

19   defendant Hermansen filed an answer, which raised an affirmative defense of lack of personal

20   jurisdiction.  (Dkt. No. 116.)

21             Based on the above, the court finds that defendant Hermansen has waived the

22   defense of lack of personal jurisdiction.  Regardless of whether the August 24, 2011 letter is

23   construed as a motion to dismiss or an answer, defendant Hermansen failed to raise the issue of

24   personal jurisdiction in that initial motion or answer.  While the letter was a procedurally

25   defective Rule 12(b) motion or answer, and was denied without prejudice on that basis, the court

26   is unable to construe it as a mere non-substantive appearance.  In the letter, defendant Hermansen

1   clearly and in detail discussed the background facts and the merits of plaintiff's claims, and

2   requested dismissal of plaintiff's claims against him.  Because he failed to object to any lack of

3   personal jurisdiction in that initial motion or answer, the defense was waived.

4           While the court is cognizant of defendant Hermansen's pro se status, pro se

5   parties are nonetheless required to abide by the rules of procedure, including the Federal Rules of

6   Civil Procedure.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995).  Accordingly, the court

7   will recommend that defendant Hermansen's motion to dismiss for lack of personal jurisdiction

8   be denied.

9                           Subject Matter Jurisdiction

10          Nevertheless, for the reasons discussed below, dismissal of defendant Hermansen

11  may be necessary to cure potential defects in federal subject matter jurisdiction.

12          Even if a party does not question the court's subject matter jurisdiction, the court

13  is required to raise and address the issue sua sponte.  See FW/PBS, Inc. v. City of Dallas, 493

14  U.S. 215, 230-31 (1990) ("The federal courts are under an independent obligation to examine

15  their own jurisdiction....").  The United States Supreme Court held that United States citizens

16  domiciled in a foreign country cannot be parties to a diversity action in federal court.  See

17  Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828-29 (1989).  In turn, the Ninth Circuit

18  has established several principles to guide the inquiry of where a party is domiciled:

19          First, the party asserting diversity jurisdiction bears the burden of
            proof...Second, a person is 'domiciled' in a location where he or
20          she has established a 'fixed habitation or abode in a particular
            place, and [intends] to remain there permanently or
21          indefinitely.'...Third, the existence of domicile for purposes of
            diversity is determined as of the time the lawsuit is filed...Finally, a
22          person's old domicile is not lost until a new one is acquired...A
            change in domicile requires the confluence of (a) physical presence
23          at the new location with (b) an intention to remain there
            indefinitely."...Courts in other jurisdictions have recognized
24          additional principles relevant to our present analysis.  The courts
            have held that the determination of an individual's domicile
25          involves a number of factors (no single factor controlling),
            including: current residence, voting registration and voting
26          practices, location of personal and real property, location of

                                        13

1         brokerage and bank accounts, location of spouse and family,
        membership in unions and other organizations, place of
2         employment or business, driver's license and automobile
        registration, and payment of taxes...The courts have also stated that
3         domicile is evaluated in terms of 'objective facts,' and that
        'statements of intent are entitled to little weight when in conflict
4         with facts.'

5 Lew v. Moss, 797 F.2d 747, 749-50 (9th Cir. 1986) (internal citations omitted).  A party's place

6 of residence is prima facie evidence of domicile.  State Farm Mut. Automobile Ins. Co. v. Dyer,

7 19 F.3d 514, 520 (10th Cir. 1994).

8         In his motion to dismiss for lack of personal jurisdiction, defendant Hermansen

9 indicated that he currently resides in Panama and no longer owns or maintains a residence in the

10 United States.  (Dkt. No. 151 at 2-3.)  Moreover, in an earlier filing with the court, defendant

11 Hermansen stated that he has lived on his Panama property since the house on it was completed

12 in 2003.  (Dkt. No. 77.)  He also suggested that the Minnesota address at which plaintiff initially

13 attempted to serve him was abandoned and not used since 2006.  (Dkt. No. 77.)  Plaintiff first

14 named defendant Hermansen as a defendant on October 28, 2010.  (See Dkt. No. 5.)  As such,

15 the court has significant concerns that defendant Hermansen was actually domiciled in Panama at

16 that time, thereby destroying complete diversity.  If so, the court is required to dismiss defendant

17 Hermansen as a dispensable nondiverse party pursuant to Fed. R. Civ. P. 21 to cure the

18 jurisdictional defects or to dismiss the entire action for lack of subject matter jurisdiction.

19 Newman-Green, Inc., 490 U.S. at 833, 837-38.

20         In light of the above, plaintiff will be provided an opportunity to file a brief,

21 limited to 15 pages, along with a declaration relating any facts and attaching any evidence

22 plaintiff currently has that defendant Hermansen was domiciled in a U.S. state other than

23 California as of October 28, 2010 (the date on which the First Amended Complaint was filed and

24 Hermansen was first joined as a defendant).  In the alternative, plaintiff may file a request for

25 dismissal of defendant Hermansen from the action.  In the event plaintiff opts to brief the issue of

26 defendant Hermansen's domicile, defendant Hermansen will be allowed to file a responsive

brief, limited to 15 pages, along with a declaration relating any facts and attaching any evidence

defendant Hermansen has that he was domiciled outside of the United States as of October 28,

2010.[3]  The parties' briefing should, to the extent possible, address the factors outlined in Lew v.

Moss, 797 F.2d 747, 749-50 (9th Cir. 1986), as discussed above.

CONCLUSION

        For the reasons outlined above, IT IS HEREBY ORDERED THAT:

        1.  Within 21 days of the date of service of this order, plaintiff shall file and serve

either (a) a brief, limited to 15 pages, along with a declaration relating any facts and attaching

any evidence plaintiff currently has that defendant Hermansen was domiciled in a U.S. state other

than California as of October 28, 2010 or (b) a request for dismissal of defendant Hermansen

from the action.

        2.  In the event plaintiff elects to brief the issue of defendant Hermansen's

domicile, defendant Hermansen shall, within 21 days of service with plaintiff's brief, file and

serve a responsive brief, limited to 15 pages, along with a declaration relating any facts and

attaching any evidence defendant Hermansen currently has that he was domiciled outside of the

United States as of October 28, 2010.  Thereafter, the matter shall be submitted on the record

without oral argument, with a written order and/or findings and recommendations to be issued by

the court.

        IT IS ALSO HEREBY RECOMMENDED THAT:

        1.  Defendants Mode and Yarrington's motion to dismiss for lack of personal

jurisdiction (dkt. no. 179) be granted in part and that plaintiff's claims against defendants Mode

and Yarrington be severed under Fed. R. Civ. P. 21 and transferred to the United States District

Court for the District of Vermont.

---

[3] The parties are advised that the purpose of the declarations is to relate facts and to attach and authenticate documentary evidence.  Arguments made in the briefs should not be repeated in the declarations.

15

1    2.  Defendant Hermansen's motion to dismiss for lack of personal jurisdiction

2  (dkt. no. 151) be denied.

3    These findings and recommendations are submitted to the United States District

4  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

5  (14) days after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8  shall be served and filed within seven (7) days after service of the objections.  The parties are

9  advised that failure to file objections within the specified time may waive the right to appeal the

10  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

11  DATED: May 4, 2012

12    <u>/s/ Gregory G. Hollows</u>
   UNITED STATES MAGISTRATE JUDGE

13  GGH/wvr
   Johnson.1968.mtd.pj.fr.wpd

14

15

16

17

18

19

20

21

22

23

24

25

26