1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7           FOR THE EASTERN DISTRICT OF CALIFORNIA

8   SHEPARD JOHNSON,

9           Plaintiff,                    No. CIV S-10-1968 GEB GGH PS

10      vs.

11  CHESTER MITCHELL, et al.,

12                                        FINDINGS AND RECOMMENDATIONS

13          Defendants.

14  _____/

15          Plaintiff first initiated this diversity action for malicious prosecution and civil

16  conspiracy to commit malicious prosecution on July 23, 2010 and is currently proceeding with

17  the third amended complaint filed on November 6, 2011.  (See Dkt. No. 119.)

18          Presently pending before the court are defendant Kim Parsons's motions to

19  dismiss plaintiff's claims against her for lack of personal jurisdiction pursuant to Fed. R. Civ. P.

20  12(b)(2) and for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ.

21  P. 12(b)(6), originally filed on March 29, 2012.  (Dkt. No. 181.)  On April 13, 2012, the court

22  ordered plaintiff to file an opposition to the motions within 21 days, and permitted defendant

23  Parsons to file a reply brief within 14 days of service with plaintiff's opposition, after which the

24  motions would be submitted on the record without oral argument.  (Dkt. No. 189.)  On May 4,

25  2012, plaintiff filed a timely opposition to defendant Parsons's motions, along with a request for

26  leave to amend his complaint.  (Dkt. No. 199.)

                                    1

1    After reviewing the papers in support of and in opposition to the motions, the

2   court finds that further briefing would not be of material assistance in deciding the motions.[1]

3   Therefore, upon consideration of the briefing submitted, the court's record in this matter, and the

4   applicable law, the court FINDS AS FOLLOWS:

5   BACKGROUND

6    The facts and procedural history of this case were previously described in detail in

7   the court's March 2, 2012 order and findings and recommendations related to other motions filed

8   in this matter.  (See Dkt. No. 169.)  As such, the court only sets forth some limited background

9   facts here.

10    Plaintiff is a real estate developer who claims that the defendants purchased lots

11   for a planned unit development on an island in Panama.  (See Third Amended Complaint, Dkt.

12   No. 119 ["TAC"] at 2-3.)  Plaintiff alleges that defendants did not want to be subject to the

13   Conditions, Covenants, and Restrictions ("CC&Rs") for the development, and so rather than

14   settling the matter by way of a contract dispute resolution, defendants "banded together and

15   launched a barrage of deliberate falsehoods, and engaged in wrongful conduct...aimed at

16   upsetting and intimidating him, destroying his reputation and business, disrupting relations with

17   other lot owners, and discouraging prospective purchasers. (TAC at 3-4.)  Defendants also

18   allegedly initiated criminal proceedings against him in the Panama courts which were

19   purportedly later dismissed, and which are the subject of plaintiff's malicious prosecution and

20   conspiracy claims in this litigation.  (TAC at 4-6.)  Plaintiff alleges that he was forced to file for

21   bankruptcy on July 3, 2007 "due in significant part to the false criminal complaints filed by

22   Defendants."  (TAC at 5.)

23

24    [1] Plaintiff requests oral argument in the event that defendant Parsons files a reply brief
raising new arguments and evidence that he has not had an opportunity to respond to.  However,
25   because the court, after reviewing the motions and plaintiff's opposition to the motions,
concludes that further briefing and argument is unnecessary, it will not consider any reply brief
26   that may be filed and thus oral argument is also unnecessary.

1    The instant motions to dismiss by defendant Parsons followed.

2  DISCUSSION

3              Defendant Kim Parsons's Motion to Dismiss for Lack of Personal Jurisdiction

4    Defendant Parsons moves to dismiss plaintiff's claims against her pursuant to

5  Fed. R. Civ. P. 12(b)(2), contending that she does not have the requisite minimum contacts with

6  the forum state of California to allow the court to exercise personal jurisdiction over her.

7    As an initial matter, plaintiff objects that defendant Parsons's motion is unusually

8  simple with minimum information.  Indeed, the motion is only two pages long.  However,

9  defendant Parsons, like plaintiff, is proceeding pro se and the court accordingly has a duty to

10  construe her pleadings and filings liberally.  Additionally, despite the brevity of her motion,

11  defendant Parsons sets forth her arguments succinctly with sufficient substance to provide

12  plaintiff with meaningful notice of the grounds of the motion and an opportunity to respond.

13  Accordingly, the court proceeds to the merits of the motion.

14              *Whether Personal Jurisdiction Exists Over Defendant Parsons*

15    The plaintiff generally bears the burden of establishing the district court's

16  personal jurisdiction over the defendant.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell &

17  Clements Ltd., 328 F.3d 1122, 1128-29 (9th Cir. 2003).  "A non-resident defendant may be

18  subject to the personal jurisdiction of the court where the defendant has either a continuous and

19  systematic presence in the state (general jurisdiction), or minimum contacts with the forum state

20  such that the exercise of jurisdiction 'does not offend traditional notions of fair play and

21  substantial justice' (specific jurisdiction)."  Martinez v. Manheim Central California, 2011 WL

22  1466684, at *1 (E.D. Cal. Apr. 18, 2011) (citing Int'l Shoe Co. v. Washington, 325 U.S. 310, 316

23  (1945)).  "Where there is no federal statute applicable to determine personal jurisdiction, a

24  district court should apply the law of the state where the court is located."  Id. (citing

25  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)).  "California law

26  requires only that the exercise of personal jurisdiction comply with federal due process

1   requirements." Id. (citing Cal. Civ. Proc. Code § 410.10 and Fred Martin Motor Co., 374 F.3d at

2   800-01).

3           In her motion, defendant Parsons states that she has been a continuous permanent

4   resident of Colorado for 33 years and has not been to California since 1995 when she was there

5   on vacation.  She is a shareholder of the Solarte Inn Corporation, which was organized and

6   operated only in Panama.  She has never personally met plaintiff, nor did she have any written or

7   electronic communications with or concerning plaintiff.  She argues that all of the actions

8   complained of in this litigation took place in Panama and that she has no connections or contacts

9   with California.  Accordingly, defendant Parsons requests dismissal for lack of minimum

10  contacts with California pursuant to International Shoe v. Washington.

11          Plaintiff does not argue that this court has general jurisdiction over defendant

12  Parsons.  It is clear that she does not have the requisite continuous and systematic contacts with

13  California that approximate a physical presence.  Instead, plaintiff claims that the court has

14  specific personal jurisdiction over defendant Parsons.

15          "Specific personal jurisdiction exists where a case arises out of forum-related

16  acts." Martinez v. Manheim Central California, 2011 WL 1466684, at *2 (E.D. Cal. Apr. 18,

17  2011).  The Ninth Circuit utilizes a three-prong test to determine whether specific jurisdiction

18  exists:

19          (1) The non-resident defendant must purposefully direct his
            activities or consummate some transaction with the forum or
20          resident thereof; or perform some act by which he purposefully
            avails himself of the privilege of conducting activities in the forum,
21          thereby invoking the benefits and protections of its laws;

22          (2) the claim must be one which arises out of or relates to the
            defendant's forum-related activities; and
23
            (3) the exercise of jurisdiction must comport with fair play and
24          substantial justice, i.e. it must be reasonable.

25  Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205-06 (9th

26  Cir. 2006).  "The plaintiff bears the burden of satisfying the first two prongs of the test...If the

1    plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum

2    state.  If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to

3    the defendant to present a compelling case that the exercise of jurisdiction would not be

4    reasonable."  Fred Martin Motor Co., 374 F.3d at 802 (internal citations omitted).

5            For purposes of the first prong, a plaintiff "must establish that [the defendant]

6    either purposefully availed [herself] of the privilege of conducting activities in California, or

7    purposefully directed [her] activities toward California...A purposeful availment analysis is most

8    often used in suits sounding in contract...A purposeful direction analysis, on the other hand, is

9    most often used in suits sounding in tort."  Fred Martin Motor Co., 374 F.3d at 802; see also

10   Yahoo! Inc., 433 F.3d 1206.  Here, given plaintiff's tortious claim of civil conspiracy to

11   commit malicious prosecution against defendant Parsons, a purposeful direction analysis should

12   be utilized.  Indeed, defendant Parsons did not enter into a contract or conduct business in

13   California, and she received no benefit, privilege, or protection from California that would be

14   susceptible to a purposeful availment analysis.  Accordingly, a purposeful direction analysis is

15   appropriate.

16           The Ninth Circuit evaluates purposeful direction under the three-part "effects" test

17   outlined in the U.S. Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984).  Fred

18   Martin Motor Co., 374 F.3d at 803; Yahoo! Inc., 433 F.3d at 1206.  To find purposeful direction

19   under Calder, the defendant must have "(1) committed an intentional act, (2) expressly aimed at

20   the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

21   state."  Id.  The primary issue on this motion is whether any of defendant Parsons's actions were

22   expressly aimed at California so as to establish purposeful direction.

23           Plaintiff first argues that the express aiming requirement is satisfied as to

24   defendant Parsons, because defendant David Miner acted as her agent when he allegedly

25   "extorted [plaintiff] in California by threatening to file criminal complaints against him unless he

26   issued titles without restrictions."  (Dkt. No. 199 at 10.)  This court previously rejected a similar

1  argument made by plaintiff in the context of defendant Martha Thomas's motion to dismiss,

2  when plaintiff argued that defendant David Miner and others were acting as defendant Thomas's

3  agents.  (Dkt. No. 169 at 21-22.)  The court explained that, as a general matter, "[a]gents can

4  bind their principals only if they have actual or apparent authority to do so."  Hanson v. America

5  West Airlines, Inc., 544 F. Supp. 2d 1038, 1043 (C.D. Cal. 2008) (citing Hawaiian Paradise Park

6  Corp. v. Friendly Broadcasting Co., 414 F.2d 750, 755 (9th Cir. 1969)).  "Actual authority may

7  be either express or implied...If a principal specifically authorizes an agent to act, the agent has

8  express authority to take that action...If a principal merely states the general nature of what the

9  agent is to do, the agent is said to have implied authority to do acts consistent with the direction."

10  Id. (internal citations omitted).  "Apparent authority results when the principal does something or

11  permits the agent to do something which reasonably leads another to believe that the agent had

12  the authority he purported to have."  Id.

13          As the court noted in its findings and recommendations regarding defendant

14  Thomas's motion (subsequently adopted by the district judge), it may well be the case that

15  defendant David Miner sent litigation updates to the other defendants, including defendant

16  Parsons, regarding the Panama criminal action.  Indeed, the defendants may well have

17  communicated and shared ideas for purposes of the litigation in Panama.  However, as in that

18  previous motion, plaintiff here offers no evidence that defendant Parsons actually authorized

19  defendant David Miner to act on her behalf *in any conduct expressly aimed at California*.  Nor

20  has plaintiff provided evidence that defendant Parsons made representations of such authority to

21  plaintiff or a third party, resulting in apparent authority.  To the contrary, defendant Parsons

22  expressly denies sending any written or electronic communications to plaintiff or concerning

23  plaintiff, a fact which plaintiff does not dispute.

24          Apart from bare allegations in the face of defendant Parsons's specific denials,

25  plaintiff has not come forth with even a minimal showing of evidence to support his agency

26  theory.  The November 15, 2008 e-mail from defendant David Miner to defendants and other

1  third parties, attached as Exhibit C to plaintiff's opposition (see dkt. no. 199-1 at 5-6) is

2  essentially an update regarding the Panama litigation and a request that defendants and others pay

3  their portions of the legal fees for the Panama attorneys.  Even if defendant David Miner played a

4  coordinating role with respect to the Panama litigation, this e-mail in no way suggests that he had

5  actual or apparent authority to act on the other defendants' behalf with respect to any conduct

6  directed to California.  This is because, as discussed further below, the mere fact that the Panama

7  criminal actions were filed against a California resident does not make those criminal actions

8  expressly aimed at California.

9         Similarly, plaintiff's argument that defendant David Miner acted as defendant

10 Parsons's agent solely because he was her "partner" in the Solarte Inn Corporation (which owns a

11 bed-and-breakfast operation in Panama) is without merit.  While the acts of a partner in some

12 circumstances may bind the partnership when the acts relate to the usual business of the

13 partnership, see Elias Real Estate, LLC v. Tseng, 156 Cal. App. 4th 425, 433-34 (2007), the

14 events at issue in this litigation clearly do not fall within the usual business of a bed-and-

15 breakfast operation.  Moreover, there is no evidence that defendant David Miner was acting on

16 behalf of the Solarte Inn Corporation, as opposed to in his individual capacity, when he allegedly

17 threatened plaintiff and sent defamatory e-mails regarding plaintiff.[2]

18        Thus, there is no basis to conclude that the express aiming requirement for

19 purposeful direction is satisfied as to defendant Parsons by virtue of defendant David Miner's

20 alleged actions.  Each defendant's contacts with the forum state must be assessed on an

21 individual basis.  See Rush v. Savchuk, 444 U.S. 320, 332 (1980) ("The requirements of

22 *International Shoe*...must be met as to each defendant").

23

24        [2] Additionally, even if defendant Parsons were copied on some e-mails by other
   defendants sent to plaintiff in California and failed to object to stray comments made about
25 plaintiff in such e-mails, the court finds that this, in the absence of affirmative conduct or
   encouragement by defendant Parsons, is woefully insufficient to establish agency or any type of
26 purposeful direction by defendant Parsons.

1    Plaintiff further argues that the express aiming requirement is satisfied, because

2  defendants, including defendant Parsons, personally attacked him in California when they filed

3  their criminal complaints in Panama.  He claims that even though the attack "went through

4  Panama," the result was felt in California.  Again, the court has already rejected this argument

5  made by plaintiff in the prior motion to dismiss brought by defendant Martha Thomas.  The court

6  reasoned as follows:

7           The mere fact that plaintiff may have suffered some resulting
            damages in California is insufficient to show that the action was
8           expressly aimed at California so as to establish the requisite
            minimum contacts.  "Although it has been argued that
9           foreseeability of causing *injury* in another State should be
            sufficient to establish such contacts there when policy
10          considerations so require, the Court has consistently held that this
            kind of foreseeability is not a sufficient benchmark for exercising
11          personal jurisdiction."  Burger King Corp. v. Rudzewicz, 471 U.S.
            462, 474 (1985) (internal citations omitted); see also Bancroft &
12          Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir.
            2000) ("Subsequent cases have struggled somewhat with *Calder*'s
13          import, recognizing that the case cannot stand for the broad
            proposition that a foreign act with foreseeable effects in the forum
14          state always gives rise to specific jurisdiction"); Brayton Purcell
            LLP v. Recordon, 606 F.3d 1124, 1129 (9th Cir. 2010) ("This
15          Court has emphasized that 'something more' than mere
            foreseeability is required in order to justify the assertion of
16          personal jurisdiction,...and that 'something more' means conduct
            expressly aimed at the forum....").

17

18  (Dkt. No. 169 at 17-18.)  In an extensive discussion of Ninth Circuit case law, the court

19  explained that the express aiming requirement is only satisfied when the defendant individually

20  targeted a known California resident's business, activities, or presence in California.  (Dkt. No.

21  169 at 18-20.)[3]  As the Ninth Circuit observed in Schwarzenegger v. Fred Martin Motor Co., 374

22  F.3d 797 (9th Cir. 2004):

23          It may be true that Fred Martin's intentional act eventually caused
            harm to Schwarzenegger in California, and Fred Martin may have

24

25       [3] The court does not repeat that entire discussion here, but instead refers the parties to its
     March 2, 2012 findings and recommendations (dkt. no. 169), which were adopted by the district
26   judge on March 22, 2012 (dkt. no. 176).

1    known that Schwarzenegger lived in California.  But this does not
     confer jurisdiction, for Fred Martin's express aim was local.
2

3    Fred Martin Motor Co., 374 F.3d at 807.

4          Here, the criminal actions in Panama did not individually target plaintiff's

5    business or activities *in California*.  The actions were filed in Panama, concerned a Panama

6    property dispute, and challenged plaintiff's Panama activities.  Therefore, Panama was the focal

7    point of the litigation, and any resultant harm suffered by plaintiff's business in California is

8    incidental.  Plaintiff implicitly concedes as much when he acknowledges that "Defendant's attack

9    of Johnson went through Panama but the result was felt in California."  (Dkt. No. 199 at 10.)

10   This amounts to no more than a reiteration of the argument that specific personal jurisdiction in

11   California is proper because plaintiff is a resident of California, which has never been the test for

12   specific personal jurisdiction.  Additionally, contrary to plaintiff's claim, the allegedly large

13   volume of criminal complaints filed in Panama does not change the fact that California was not

14   the focal point of the criminal actions.

15         Furthermore, plaintiff's contention that he was targeted as an individual in

16   California, because defendants sued him as opposed to Grupo Islas Tropicales (the corporation

17   which technically undertook the development in Panama) or Monte Watson (its salesperson) is

18   devoid of merit.  In his own complaint, plaintiff alleges that he, as a real estate developer, and his

19   "related corporations" Grupo Islas Tropicales and others undertook the planned unit development

20   at issue in Panama.  (TAC at 3.)  Plaintiff's attempt to now disclaim his involvement in the

21   development by relying on corporate formalities is unpersuasive.

22         Accordingly, the court finds that plaintiff has failed to show that defendant

23   Parsons engaged in any conduct expressly aimed at California.  As such, plaintiff failed to make

24   a colorable showing of purposeful direction on her part.  "The plaintiff bears the burden of

25   satisfying the first two prongs of the test [for specific personal jurisdiction]...If the plaintiff fails

26   to satisfy either of these prongs, personal jurisdiction is not established in the forum state."  Fred

1    Martin Motor Co., 374 F.3d at 802.  Because plaintiff has failed to demonstrate purposeful

2    direction by defendant Parsons, the court does not reach the remaining two factors of the specific

3    personal jurisdiction test.  The court concludes that it does not have personal jurisdiction over

4    defendant Parsons.

5                    Plaintiff's Request for Jurisdictional Discovery

6                    In his opposition, plaintiff also requests leave to conduct jurisdictional discovery

7    regarding defendant Parsons.  The court must therefore decide whether plaintiff is entitled to a

8    further opportunity to generate potential evidence that this court has personal jurisdiction over

9    defendant Parsons.

10                   "In considering a motion to dismiss for lack of personal jurisdiction, a court may

11   either postpone the decision and permit discovery, determine the motion on the basis of the

12   pleadings and affidavits, or hold an evidentiary hearing."  Martinez v. Manheim Central

13   California, 2011 WL 1466684, at *3 (E.D. Cal. Apr. 18, 2011) (citing Data Disc, Inc. v. Systems

14   Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)).  "Discovery should ordinarily

15   be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or

16   where a more satisfactory showing of the facts is necessary.'"  Butcher's Union Local No. 498,

17   United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986)

18   (quoting Data Disc, Inc., 557 F.2d at 1285 n.1).  However, "[w]here a plaintiff's claim of

19   personal jurisdiction appears to be both attenuated and based on bare allegations in the face of

20   specific denials made by defendants, the Court need not permit even limited discovery."

21   Terracom v. Valley Nat'l Bank, 49 F.3d 555, 562 (9th Cir. 1995) (quoting Rich v. KIS Cal., Inc.,

22   121 F.R.D. 254, 259 (M.D.N.C. 1988).  "In other words, limited discovery should not be

23   permitted to conduct a 'fishing expedition.'"  Martinez, 2011 WL 1466684, at *3 (citing Rich,

24   121 F.R.D. at 259).

25                   "Although there is no definitive Ninth Circuit authority specifically addressing the

26   level of showing that a plaintiff must make to be entitled to jurisdictional discovery, district

1   courts in this circuit have required a plaintiff to establish a 'colorable basis' for personal

2   jurisdiction before discovery is ordered." Martinez, 2011 WL 1466684, at *4 (citing Mitan v.

3   Feeney, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007); eMag Solutions, LLC v. Toda Kogyo

4   Corp., 2006 WL 3783548, at *2 (N.D. Cal. Dec. 21, 2006); and Chapman v. Krutonog, 256

5   F.R.D. 645, 649 (D. Haw. 2009).  "This 'colorable' showing should be understood as something

6   less than a prima facie showing, and could be equated as requiring the plaintiff to come forward

7   with 'some evidence' tending to establish personal jurisdiction over the defendant."  Mitan, 497

8   F. Supp. 2d at 1119 (internal citations omitted).

9        Here, for the reasons discussed above, plaintiff has not made even a colorable

10   showing that this court has personal jurisdiction over defendant Parsons.  Moreover, it is not

11   clear what discovery plaintiff intends to conduct.  He merely states that he "requests leave to

12   conduct jurisdictional discovery on Parsons to confirm that Miner acted as an agent for Parsons."

13   (Dkt. No. 199 at 11.)  This amounts to no more than a request "to fish on a hunch that something

14   might be caught in a widely-cast net."  Martinez, 2011 WL 1466684, at *5; see also Boschetto v.

15   Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (holding that denial of discovery is not an abuse of

16   discretion when it is "based on little more than a hunch that it might yield jurisdictionally

17   relevant facts").  Therefore, the court concludes that further jurisdictional discovery regarding

18   defendant Parsons is unwarranted.

19                    Dismissal or Transfer of Claims against Defendant Parsons

20        Finally, in light of the court's conclusion that it lacks personal jurisdiction over

21   defendant Parsons, the only issue remaining is whether plaintiff's claims against defendant

22   Parsons should be dismissed or transferred to the District of Colorado where Parsons resides.  28

23   U.S.C. § 1631 provides that:

24              Whenever a civil action is filed in a court...and that court finds that
                there is a want of jurisdiction, the court shall, if it is in the interest
25              of justice, transfer such action...to any other such court in which
                the action...could have been brought at the time it was filed...and
26              the action...shall proceed as if it had been filed in...the court to

1   which it is transferred on the date upon which it was actually filed
2   in...the court from which it is transferred.

3   In this case, the court cannot transfer the entire action to the District of Colorado, because it is

4   obvious that the Colorado district court would lack personal jurisdiction over several of the other

5   defendants.

6   The Circuits are split regarding whether the language of 28 U.S.C. § 1631 permits

7   federal courts to partially transfer an action.  See United States v. County of Cook, Ill., 170 F.3d

8   1084 (Fed. Cir. 1999) (approving transfer of some, but not all, claims); FDIC v. McGlamery, 74

9   F.3d 218, 222 (10th Cir. 1996) (finding transfer of some claims appropriate only after a Rule 21

10  severance); Hill v. United States Air Force, 795 F.2d 1067, 1070 (D.C. Cir. 1986) (finding the

11  statute authorizes the transfer of an action, not a claim).  Even within the same circuit, cases have

12  not always been consistent.  The Tenth Circuit recently stated that, although transfer was a

13  discretionary option under 28 U.S.C. § 1631 to cure deficiencies related to personal jurisdiction,

14  it was "aware of no authority even permitting, much less requiring, a district court to unilaterally

15  split up an action and transfer the resultant components to diverse jurisdictions under the

16  auspices of § 1631." Schrader v. Biddinger, 633 F.3d 1235, 1249-50 (10th Cir. 2011).  However,

17  Schrader curiously cited to an earlier Tenth Circuit decision, Trujillo v. Williams, 465 F.3d 1210

18  (10th Cir. 2006), which actually held that the district court had discretion to sever and transfer a

19  plaintiff's claims against Virginia-based defendants from his claims against New Mexico-based

20  defendants, or to dismiss the claims against the Virginia-based defendants, to cure jurisdictional

21  defects. Id. at 1216.  Indeed, in Trujillo, because the district court had not indicated its reasons

22  for dismissing as opposed to transferring the claims, the Tenth Circuit remanded the case for a

23  specific determination of whether the plaintiff's claims against the Virginia defendants should be

24  transferred rather than dismissed under the federal transfer statutes. Id. at 1222-23.

25  While the Ninth Circuit has not squarely addressed the issue, it implicitly

26  recognized that a portion of a case could be transferred. See e.g. Baeta v. Sonchik, 273 F.3d

12

1  1261, 1264 (9th Cir. 2001) ("Under the circumstances presented, transfer of the portion of the

2  habeas petition raising nationality allegations to this Court is appropriate."); see also Nelson v.

3  International Paint Co., 716 F.2d 640, 642 (9th Cir. 1983).  Additionally, the court agrees with

4  the rationale of the Federal Circuit in allowing transfer of individual claims:

5
6
7
8
9

> The United States suggests no logical reason why this remedy
> should not be allowed on a claim-by-claim basis.  It would indeed
> be a curious result that a district court could transfer an action
> under § 1631 containing a single claim over which it lacked
> jurisdiction but could not transfer that claim if the claimant made
> an additional claim in his action over which the court did have
> jurisdiction.  We see no reason to deny the remedial benefit of §
> 1631 in this circumstance merely because some of the claims were
> properly lodged in the transferor court.

10  County of Cook, Ill., 170 F.3d at 1089.  Furthermore, in the event a Rule 21 severance[4] is

11  technically required before transfer of individual claims so as to result in the transfer of an

12  "action," see 28 U.S.C. § 1631 and McGlamery, 74 F.3d at 222, the court has no difficulty doing

13  so here.  Defendant Parsons is not an indispensable party to this action, and plaintiff's claims

14  against her can be severed if necessary to prevent prejudice.  See Pamplona v. Hernandez, 2009

15  WL 578578, at * 3 (S.D. Cal. March 5, 2009).

16          Thus, the only question is whether transfer would be in the interest of justice.

17  "When determining whether transfer is in the interest of justice, courts have considered whether

18  the failure to transfer would prejudice the litigant, whether the litigant filed the original action in

19  good faith, and other equitable factors."  Cruz-Aguilera v. INS, 245 F.3d 1070, 1074 (9th Cir.

20  2001).  "Normally transfer will be in the interest of justice because normally dismissal of an

21  action that could be brought elsewhere is time-consuming and justice-defeating."  Baeta v.

22  Sonchik, 273 F.3d 1261, 1264-65 (9th Cir. 2001).  This principle applies with even greater force

23  when a claim would be time-barred without a transfer.  Id.

24  \\\\\

25

26  _____
    [4] Fed. R. Civ. P. 21 provides, in part, that "[t]he court may also sever any claim against a
    party."

1        In this case, it is clear that plaintiff did not have a sufficient basis for bringing his

2   claims against defendant Parsons in this district.  Nevertheless, given plaintiff's pro se status, the

3   court cannot confidently conclude that plaintiff acted in bad faith.  Moreover, a failure to transfer

4   would prejudice plaintiff, because the statute of limitations would likely bar refiling the claims

5   against defendant Parsons in Colorado and plaintiff would be unnecessarily required to pay

6   another filing fee.  Furthermore, for these same reasons, the court has already severed and

7   transferred plaintiff's claims against defendant Martha Thomas to the District for Colorado, and

8   it may be possible for the claims against these defendants to be consolidated in that district.

9        Accordingly, the court will recommend that defendant Parsons's motion to

10  dismiss for lack of personal jurisdiction be granted in part and that plaintiff's claims against

11  defendant Parsons be severed under Fed. R. Civ. P. 21 and transferred to the United States

12  District Court for the District of Colorado.

13              Defendant Kim Parsons's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

14       In light of the court's conclusion that it lacks personal jurisdiction over defendant

15  Parsons, it is unable to (or exercises its discretion not to) adjudicate defendant Parsons's

16  alternative motion to dismiss for failure to state a claim upon which relief can be granted

17  pursuant to Fed. R. Civ. P. 12(b)(6).  Accordingly, the court will recommend that the motion be

18  denied without prejudice.

19              Plaintiff's Request for Leave to Amend

20       In his opposition to defendant Parsons's motions, plaintiff also included a request

21  for leave to amend his complaint to include Exhibit C to the opposition (the above-mentioned

22  November 15, 2008 e-mail from defendant David Miner), (see dkt. no. 199-1 at 5-6) as an exhibit

23  to the complaint and make other "minimum changes."

24       The court recognizes that the Federal Rules of Civil Procedure provide that the

25  court should ordinarily "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P.

26  15 (a)(2).  However, the court has already cautioned plaintiff on several occasions that

1   amendments to the complaint are now at an end.  This action has already been pending since July

2   23, 2010, the pleadings are not settled, certain jurisdictional issues remain unresolved (at least

3   some of which were caused by later amendments to the complaint), and the case has not yet been

4   scheduled for trial.  This is primarily because the court, in light of plaintiff's pro se status, has

5   given plaintiff multiple opportunities to amend his complaint.  However, at this stage, further

6   amendment will prejudice defendants, who deserve to proceed to the merits and have their day in

7   court as well.  As such, the court finds that further amendment is not in the interests of justice.

8           Furthermore, the proposed amendment here is futile, because plaintiff merely

9   wishes to attach an essentially evidentiary exhibit (an e-mail) to the complaint.  Nothing

10  precludes plaintiff from utilizing the e-mail in subsequent motions and other proceedings in

11  accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

12  Indeed, the court expressly considered the e-mail for purposes of deciding defendant Parsons's

13  motion to dismiss for lack of personal jurisdiction.  Therefore, there is no reason to amend the

14  complaint merely to add the e-mail as an exhibit.

15  CONCLUSION

16          For the foregoing reasons, IT IS HEREBY RECOMMENDED THAT:

17          1.  Defendant Kim Parsons's motion to dismiss for lack of personal jurisdiction

18  (dkt. no. 181) be granted in part and that plaintiff's claims against defendant Parsons be severed

19  under Fed. R. Civ. P. 21 and transferred to the United States District Court for the District of

20  Colorado.

21          2.  Defendant Kim Parsons's motion to dismiss for failure to state a claim upon

22  which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) be denied without prejudice.

23          3.  Plaintiff's request for leave to amend the third amended complaint be denied.

24          These findings and recommendations are submitted to the United States District

25  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

26  (14) days after being served with these findings and recommendations, any party may file written

1   objections with the court and serve a copy on all parties.  Such a document should be captioned

2   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3   shall be served and filed within seven (7) days after service of the objections.  The parties are

4   advised that failure to file objections within the specified time may waive the right to appeal the

5   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6   DATED: May 10, 2012

7                                               /s/ Gregory G. Hollows
                                        UNITED STATES MAGISTRATE JUDGE

8

9   GGH/wvr
    Johnson.1968.pj2.fr.wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26