IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHEPARD JOHNSON,

        Plaintiff,                  No. 2:10-cv-1968 GEB GGH PS

        vs.

CHESTER MITCHELL, et al.,

                         ORDER AND
                         FINDINGS AND RECOMMENDATIONS

        Defendants.

_____/

On May 4, 2012, the court, based on information in prior court filings suggesting that defendant Ford Hermanson may have been domiciled in Panama at the time he was joined as a defendant in this action on October 28, 2010, sua sponte raised the issue of whether dismissal of defendant Ford Hermanson pursuant to Fed. R. Civ. P. 21 may be necessary to cure potential defects in federal subject matter jurisdiction.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction...."); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828-29 (1989) (holding that United States citizens domiciled in a foreign country cannot be parties to a diversity action in federal court, because they destroy complete diversity).

The court ordered plaintiff, within 21 days of the date of service of that order, to file either (a) a brief, limited to 15 pages, along with a declaration relating any facts and attaching any evidence plaintiff had that defendant Ford Hermanson was domiciled in a U.S. state other

1

than California as of October 28, 2010, or (b) a request for dismissal of defendant Ford Hermanson from the action.  In turn, in the event plaintiff elected to brief the issue of defendant Ford Hermanson's domicile, defendant was permitted to file a responsive brief, limited to 15 pages, along with a declaration relating any facts and attaching any evidence defendant Ford Hermanson had that he was domiciled outside of the United States as of October 28, 2010.  The court order further provided that the matter would then be submitted on the record without oral argument with a written order and/or findings and recommendations to follow.  (See Dkt. No. 197 at 15.)

On May 25, 2012, plaintiff filed his brief and supporting documentation in response to the court's order, and on June 11, 2012, defendant Ford Hermanson filed his responsive brief and supporting documentation.  (Dkt. Nos. 202, 202-1, 206.)  Subsequently, on June 19, 2012, plaintiff filed a request for an oral hearing on the matter.  (Dkt. No. 209.)  After reviewing the parties' briefs and supporting documents, the court agreed that a hearing and oral argument would be beneficial in resolving the matter, and accordingly set a hearing for August 2, 2012 at 10:00 a.m.  (Dkt. No. 210.)

At the hearing, plaintiff and defendant Ford Hermanson appeared pro se.  After considering the parties' briefs and oral arguments, the court's record in this matter, and the applicable law, the court now FINDS AS FOLLOWS:

BACKGROUND

The facts and procedural history of this case have previously been set forth in detail in several of the court's prior orders and findings and recommendations.  (See e.g. Dkt. Nos. 169, 197, 200.)  Accordingly, it will not be repeated here.  Moreover, the instant proceedings do not involve the substantive allegations and claims in the case; instead, the sole issue to be decided here is whether defendant Ford Hermanson was domiciled in Panama or Minnesota as of October 28, 2010, the date he was joined as a defendant in this action.

\\\\\\

DISCUSSION

The Ninth Circuit has established several principles to guide the inquiry of where a party is domiciled:

> First, the party asserting diversity jurisdiction bears the burden of proof...Second, a person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'...Third, the existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed...Finally, a person's old domicile is not lost until a new one is acquired...A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely."...Courts in other jurisdictions have recognized additional principles relevant to our present analysis. The courts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes...The courts have also stated that domicile is evaluated in terms of 'objective facts,' and that 'statements of intent are entitled to little weight when in conflict with facts.'

Lew v. Moss, 797 F.2d 747, 749-50 (9th Cir. 1986) (internal citations omitted). Domicile is not the same as residency. For example, a United States citizen may be residing in a particular country temporarily for a specific purpose, such as a temporary work assignment, intending to return permanently to a U.S. state after a definite period of time. However, a party's place of residence is prima facie evidence of domicile. State Farm Mut. Automobile Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994).

As the court observed at the hearing, both parties made commendable efforts to discover and present the facts, evidence, and arguments relevant to the determination of defendant's domicile. Admittedly, the question is a somewhat close one. Nevertheless, for the reasons set forth below, the court ultimately finds that the weight of the evidence supports a

\\\\\

finding that defendant Ford Hermanson was domiciled in Panama as of October 28, 2010.[1]

There is no dispute that defendant was domiciled in Minnesota for many years while he lived and worked there with his former wife, Patricia Hermanson.  In 2000, defendant purchased land from plaintiff in Panama on which he built a retirement home.  (Dkt. No. 206 at 1-2, ¶ 1.)  Although he asserts that he lived there every year since 2004, his stays at the Panama house appear to initially have been on a non-permanent basis for extended vacations during the winter months in Minnesota.  (Id.)

However, in 2008, defendant was granted a Pensionado card by Panama, which is essentially a type of permanent resident status mostly for retirees.  See http://www.embassyofpanama.org/cms/retire_advantages3.php.  (Dkt. No. 206, ¶ 2, Ex. C.)  To receive this status, plaintiff had to make a showing of sufficient income and take medical tests to demonstrate good health.  (Dkt. No. 206, ¶ 2.)  Thereafter, defendant and his wife divorced in February 2010.  (Dkt. No. 206, ¶ 1; see also Dkt. No. 202-1 at 3-18.)  Defendant states that he considered Panama his permanent home at least as of his divorce in February 2010, when the Panama house became his permanent residence.  (Dkt. No. 206, ¶¶ 1, 8.)  At the hearing, defendant explained, and plaintiff mostly agreed, that the Panama house is a fairly unique property that is accessible only by boat and a special type of elevator, which was constructed by defendant and facilitates transport from the boat dock up to the house.  Lighting for the house is provided entirely by solar energy, a small generator provides electricity, and defendant constructed a type of makeshift "water tower" to provide water to the house.  The house is a fully furnished 3 bedroom, 3 bathroom home, which defendant never leases or rents out.  (Dkt. No. 206, ¶ 3, Ex. A.)  The property, fully paid for in 2000, is now recorded in the Public Registry in Panama as of July 2011 when the deed was finally transferred and recorded.  (Dkt. No. 206, ¶ 7, Ex. K.)

---

[1] The court does not exhaustively set forth all the evidence presented by the parties, but instead addresses the evidence the court finds most persuasive for purposes of its analysis.

In the February 22, 2010 divorce decree, defendant was awarded the house and real property in Panama; some real property in Minnesota, including a property on Evergreen Shores Drive in Detroit Lakes, Minnesota; some financial assets (annuities and mutual funds); and certain personal property (including classic automobiles, antique chairs, tractors, tools, etc.) (Dkt. No. 202-1 at 3-18.)  Although the parties devote significant discussion to the location of various items of defendant's personal property, the court does not find those facts to be persuasive one way or the other.  Location of personal property is one objective factor to consider in the analysis under Lew and while defendant points out that he generally stores and maintains his personal items, tools, and furniture in his Panama home (dkt. no. 206, ¶ 3), there is also no dispute that defendant still had cars, furniture, tools, etc. in Minnesota as of October 28, 2010.

However, this is not entirely surprising, given that many of these items were awarded in the divorce decree earlier that year, may have been difficult to transport to Panama (especially given the accessibility issues at the Panama house), and may have taken time to sell. At the hearing, defendant also explained that he only uses a boat for transport in Panama, and therefore did not need to move his cars to Panama.  It naturally follows that defendant's Minnesota cars would be titled and registered in Minnesota.  Defendant stated that he has a Panama boating license for transport there and a Minnesota driver's license for driving during his visits to family and friends in Minnesota.  Furthermore, defendant's former wife, in a declaration submitted by plaintiff, specifically complained that much of defendant's Minnesota personal property was stored on *her* property as of October 28, 2010 until it was later removed at her insistence.  (Dkt. No. 202-1 at 26, ¶¶ 4-5, 8-9.)  Some of the automobiles have since been sold, and there is no evidence that defendant acquired new personal property in Minnesota other than his former wife's interest in a car awarded to both of them in the divorce decree.  (Dkt. No. 202-1 at 26, ¶¶ 6-7; Dkt. No. 206, ¶ 5.)

According to defendant, he has not filed any income taxes in Minnesota since 2009, except for in 2012 when he had to declare income from the sale of automobiles previously

1   awarded in the divorce.  (Dkt. No. 206, ¶ 5.)  The location of defendant's annuities and mutual

2   funds in the United States (dkt. no. 202-1 at 25, ¶ 3) is given little weight, because there may be a

3   variety of tax and other legal and practical obstacles to moving such funds out of the United

4   States.  With respect to other financial assets, the evidence is also at best ambiguous, because

5   defendant maintained bank accounts in both Panama and Minnesota in 2010.  (Dkt. No. 202-1 at

6   24, 26, ¶ 6; Dkt. No. 206, Ex. L.)

7         In regards to defendant's Minnesota real property, defendant states that although

8   he immediately erected a "For Sale" sign on the Evergreen Shores Drive property after the

9   divorce, his attempts to sell it were thwarted by the weak U.S. economy.  Defendant and his son

10  then purchased a small trailer, which was parked on the lot and primarily used by his son for

11  hunting until it was later sold.  Although defendant himself spent some nights there while

12  visiting Minnesota, the trailer was not a permanent structure and the property had no well, no

13  electric power, and no septic system, making it unsuitable to live there permanently.  (Dkt. No.

14  206, ¶ 6, Ex. B.)  The Evergreen Shores Drive lot remains for sale and defendant has not built

15  any permanent structure on it.  (Dkt. No. 206, ¶ 6.)

16        Plaintiff notes that defendant filed several court documents listing a P.O. Box

17  address in Detroit Lakes, Minnesota.  (See e.g. Dkt. Nos. 77, 206.)  According to defendant's

18  former wife's declaration submitted by plaintiff, defendant also informed her that his new

19  residence in Minnesota is an address in Stillwater, Minnesota.  (Dkt. No. 202-1 at 26, ¶ 12.)  She

20  further states that she wrote defendant a letter there, which was not returned.  (Id.)  Defendant in

21  turn denies that he resides in Stillwater, Minnesota.  He acknowledges that he has a friend, now

22  fiancee, there whom he stays with when he visits Minnesota to see her, relatives, and to attend to

23  this litigation, but states that he has no financial interest in the property and does not maintain

24  any personal property there.  His fiancee[2] also assists him with receiving court documents in the

25  _____

26        [2] Plaintiff correctly noted that the fact that defendant has a fiancee in Minnesota
    demonstrates substantial ties to Minnesota.  However, it is unclear exactly when this former

1    United States.  (Dkt. No. 206, ¶ 8, Ex. I.)  Defendant submitted an affidavit from his fiancee that

2    confirms defendant's account.  (Dkt. No. 206, Ex. J.)  With regards to the P.O. Box in

3    Minnesota, defendant explained that it was a temporary measure set up to facilitate court

4    correspondence, is maintained by his brother, and will be canceled upon conclusion of this case.

5    (Dkt. No. 206, ¶ 8.)  Certainly, the fact that defendant has not owned any suitable structure for

6    permanent habitation in Minnesota since his February 2010 divorce is powerful evidence that

7    defendant did not consider Minnesota his permanent home as of October 28, 2010.

8           Plaintiff's best evidence that defendant may have been domiciled in Minnesota is

9    an "Application for Owner Occupied Homestead Classification" completed and signed by

10   defendant on October 20, 2010 – just a few days prior to October 28, 2010.  (Dkt. No. 202-1 at

11   19-22.)  In that application, defendant claimed a homestead for purposes of property tax on the

12   Evergreen Shores Drive property, stating that he had owned it since 1990 and started occupying

13   it as of April 10, 2010.  The form stated that "[b]y signing below, I certify that the information on

14   this form is true and correct to the best of my knowledge.  I also certify that I am a Minnesota

15   resident, and I occupy the property described in Section 1 as my primary place of residence."

16   (Dkt. No. 202-1 at 19-20, 22.)  The instructions accompanying the form stated that to qualify for

17   the homestead classification, the applicant must (1) be one of the owners of the property; (2)

18   occupy the property as his or her primary residence; and (3) be a Minnesota resident.  The

19   instructions also made clear that penalties applied for making false statements on the form, and

20   that the county assessor was to be notified within 30 days if the applicant changes his or her

21   primary residence.  (Dkt. No. 202-1 at 21-22.)  A subsequent handwritten note by staff at the

22   county assessor's office indicates that defendant on June 30, 2011 requested to withdraw the

23   homestead status on the property.  (Dkt. No. 202-1 at 23.)

24   \\\\\

25

26   friend became defendant's fiancee, how often she visits him in Panama, and what exactly their
     future plans are.  Accordingly, this fact is not dispositive.

1    In his brief and at the hearing, defendant conceded that the application was

2 erroneously completed and that he did not in fact qualify for the homestead classification.  He

3 explained that he did not carefully read the application and that he misunderstood from

4 discussions with the county assessor's staff that the trailer on the Evergreen Shores Drive

5 property was adequate to claim the tax reduction.  (Dkt. No. 206, ¶ 6.)  There can be little doubt

6 that defendant's statements in the homestead classification application are facially inconsistent

7 with a Panama domicile.  At worst, defendant intentionally made false statements to lower his

8 property taxes.  At best, even if the court accepts defendant's explanation of an honest

9 misunderstanding, it is troubling that defendant did not carefully read the form he was signing,

10 especially given the form's explicit instructions and questions he answered to support a

11 permanent Minnesota residence.  (Dkt. No. 202-1 at 21-22.)[3]

12    Plaintiff urges that defendant should be held to his prior statements to the

13 Minnesota tax authorities.  Although the court generally agrees with the underlying sentiment, it

14 notes that its task in this proceeding is not to penalize defendant for false or careless statements

15 he may have made – that is an issue between defendant and the Minnesota tax authorities, which,

16 as noted above, appear to be authorized to impose penalties for false statements on the form if

17 they elect to do so.  Instead, the court's sole duty is to determine defendant's domicile for

18 purposes of subject matter jurisdiction.  As discussed above, defendant has not owned any

19 suitable structure for permanent habitation in Minnesota since his February 2010 divorce.  By

20

21    [3]  At oral argument, plaintiff argued that the June 30, 2011 note by the county assessor
reflecting defendant's request to withdraw homestead status further supports Minnesota as
defendant's domicile.  The note stated: "Pull the homestead for 2012 pay per Ford Hermanson
22 6-30-11.  He said he no longer considers this his primary residence, he is living with someone
now.  The camper still sits here from time to time, but he doesn't stay there all summer
23 anymore."  (Dkt. No. 202-1 at 23.)  At best, this third-party note is ambiguous and subject to
different interpretations.  Defendant explained that when he realized his error, he requested that
24 the homestead credit be cancelled, but that it was too late for a retroactive cancellation.  (Dkt.
No. 206, ¶ 6.)  The reference to "living with someone" could arguably refer to living permanently
25 with someone in Minnesota, but the next sentence also suggests that it could be referring to
where plaintiff was staying that particular summer while visiting Minnesota, as opposed to prior
26 visits when he occasionally slept in the trailer on the property.

1   contrast, he owns a unique, family-sized home in Panama in which he clearly invested significant

2   time and effort by, for example, constructing a custom elevator from the dock up to the house

3   and installing solar lighting and an improvised "water tower."  In light of these persuasive

4   objective facts, it makes no sense to conclude that defendant still considered Minnesota his

5   permanent home as of October 28, 2010.  Furthermore, for the reasons discussed above, the

6   location of plaintiff's other personal property is not dispositive.  Plaintiff also submitted evidence

7   that he owns a corporation in Panama, and that he underwent gallbladder surgery and medical

8   treatment in Panama in 2010, further reinforcing his ties to Panama.  (Dkt. No. 206, Exs. D, E.)

9               To be sure, even though defendant was physically in Panama on October 28, 2010

10   (see dkt. no. 206, Ex. G), the evidence shows that he regularly travels to Minnesota.  (Dkt. No.

11   206, Exs. F, G.)  Again, however, this is not necessarily inconsistent with a domicile in Panama,

12   given that he has children, grandchildren, and some assets remaining in Minnesota, and that he is

13   still involved in defending himself in the instant litigation in the United States.  The court has

14   little doubt that defendant was initially, as plaintiff puts it, a "snowbird," who was domiciled in

15   Minnesota, but spent winter months in Panama.  Nevertheless, the weight of the evidence

16   suggests that this scenario changed upon defendant's divorce when his Panama vacation home

17   became his permanent retirement home.

18               Although plaintiff, as the party asserting diversity jurisdiction, generally has the

19   burden of proving defendant's domicile, defendant indisputably had a long-established domicile

20   in Minnesota and accordingly had the burden of demonstrating a change of domicile to Panama,

21   i.e. both a physical presence and an intention to remain there indefinitely.   Lew, 797 F.2d at 749-

22   50.  For the reasons outlined above, the court finds that defendant has made a satisfactory

23   showing that he changed his domicile and that he was domiciled in Panama as of October 28,

24   2010.

25               In light of this conclusion, the joinder of defendant Ford Hermanson destroys

26   complete diversity.  Newman-Green, Inc., 490 U.S. at 828-29 (holding that United States citizens

1   domiciled in a foreign country cannot be parties to a diversity action in federal court, because

2   they destroy complete diversity).  Although this could result in dismissal of the entire case for

3   lack of subject matter jurisdiction, a less drastic remedy is available here.  A court may, in the

4   absence of prejudice to the other parties, dismiss dispensable nondiverse parties pursuant to Fed.

5   R. Civ. P. 21 to cure the jurisdictional defects.  Newman-Green, Inc., 490 U.S. at 833, 837-38.

6   Fed. R. Civ. P. 21 provides, in part, that "[o]n motion or on its own, the court may at any time,

7   on just terms, add or drop a party."  Here, defendant Ford Hermanson is not an indispensable

8   party.  Therefore, the court will recommend that plaintiff's claims against defendant Ford

9   Hermanson be dismissed without prejudice pursuant to Fed. R. Civ. P. 21.

10                              Plaintiff's Motion for Reconsideration

11           The court notes that plaintiff also filed a motion for reconsideration with respect

12  to the court's July 31, 2012 order striking plaintiff's unauthorized "reply brief" filed four days

13  before the hearing on Sunday July 29, 2012.  (Dkt. Nos. 216, 217, 218, 219.)  As the court

14  previously observed, not only was plaintiff not granted permission to file additional briefing, but

15  defendant had no opportunity to respond in writing to plaintiff's unsolicited brief prior to the

16  hearing.  (See Dkt. No. 218 at 2.)  Instead, having apparently not yet received notice of the order

17  striking plaintiff's brief, defendant filed a further "reply" to plaintiff's reply brief, which was

18  docketed after the hearing.  (Dkt. No. 221.)  As previously noted, these supplemental,

19  unauthorized rounds of briefing impose additional and unwarranted burden on a court facing

20  limited judicial resources.  (See Dkt. No. 218 at 2-3.)

21           In his motion, plaintiff explains that he misunderstood the court's prior order

22  setting a hearing on the matter of defendant's domicile as also allowing for the submission of

23  additional evidence.  He further states that, pursuant to discussions with defendant, he sent the

24  additional briefing to defendant via e-mail to ensure that defendant had time to review it prior to

25  the hearing.  Although the court accepts plaintiff's explanation and will not impose any other

26  sanctions, the court finds no reason to reverse its prior decision to strike plaintiff's unauthorized

1   reply brief.  Both parties had an adequate opportunity to present their evidence and arguments in

2   their initial briefs, and the court entertained further oral argument at the hearing to allow the

3   parties to clarify and further explain their positions.  In any event, the court has reviewed the

4   unauthorized additional briefing submitted and has determined that it does not change the court's

5   ultimate conclusion with respect to defendant's domicile.  Because plaintiff's unauthorized reply

6   brief was stricken, defendant's subsequent reply is moot and will also be stricken.

<u>Status (Pre-Trial Scheduling) Conference</u>

8           In light of the fact that jurisdictional issues now appear to be close to final

9   resolution, the court finds it appropriate to schedule another status (pre-trial scheduling)

10  conference in this matter for October 4, 2012 at 10:00 a.m. before the undersigned.  Plaintiff and

11  all remaining defendants shall confer as soon as practicable pursuant to Fed. R. Civ. P. 26(f) and

12  file a status report(s) no later than September 27, 2012.  <u>The filing of a joint status report is</u>

13  <u>strongly encouraged</u>.  The parties' report(s) should briefly describe the case and address:

14          (a) The report required by Rule 26 outlining the proposed discovery plan and its

15              scheduling;

16          (b) The potential for utilizing collective discovery responses in lieu of individual

17              responses in light of the number of parties involved;

18          (c) Cut-off dates for discovery and law and motion, and dates for the

19              pretrial conference and trial;

20          (d) The potential appointment of defense lead counsel;

21          (e) Special procedures, if any;

22          (f) Estimated trial time;

23          (g) Modification of standard pretrial procedures due to the simplicity or

24              complexity of the proceedings;

25          (h) Whether a case is related to any other case, including bankruptcy;

26          (i) Whether a settlement conference should be scheduled;

1    (j) Any other matters that may add to the just and expeditious disposition of

2           this matter.

3           After the status conference, the court will issue a scheduling order pursuant to

4    Fed. R. Civ. P. 16(b).

5           Discovery

6           All discovery in this matter will remain stayed until the status conference has

7    taken place.

8    CONCLUSION

9           Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

10          1.  Plaintiff's motion for reconsideration (dkt. no. 219) is DENIED.

11          2.  Defendant Ford Hermanson's reply to plaintiff's reply brief (dkt. no. 221) is

12   STRICKEN.

13          3.  A status (pre-trial scheduling) conference in this matter is set for October 4,

14   2012 at 10:00 a.m.  The parties shall confer as soon as practicable pursuant to Fed. R. Civ. P.

15   26(f) and file a status report(s) in accordance with this order no later than September 27, 2012.

16          4.  All discovery in this matter shall remain stayed until the court's status

17   conference has taken place.

18          IT IS ALSO HEREBY RECOMMENDED that plaintiff's claims against

19   defendant Ford Hermanson be DISMISSED WITHOUT PREJUDICE pursuant to Fed. R. Civ. P.

20   21 and that defendant Ford Hermanson be DISMISSED from the action.

21          These findings and recommendations are submitted to the United States District

22   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

23   (14) days after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26   shall be served and filed within seven (7) days after service of the objections.  The parties are

12

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 7, 2012

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE

GGH/wvr
Johnson.1968.domicile.wpd

13